(114 So. 644)

No. 27519.

### CENTRAL LUMBER CO., Inc., v. SCHROEDER.

Oct. 31, 1927. Rehearing Denied Nov. 28, 1927.

*(Syllabus by Editorial Staff.)*

1. Mechanics' liens ⬅183—Transactions for furnishing material for buildings and fencing on four lots held to constitute "single continuous transaction" for improving single piece of property within materialmen's lien law (Act No. 139 of 1922).

Transactions of lumber company with landowner relative to furnishing material for erection of residence on one lot and garage and dwelling on another, and for fencing two other lots, *held* to constitute "single continuous trans-action" for improvement of what was considered single piece of property consisting of four lots, within Act No. 139 of 1922, providing for materialman's lien.

2. Mechanics' liens ⬅132(4)—Under repealed materialman's lien statute, privileges granted were required to be recorded within 30 days from completion of work (Act No. 139 of 1922, § 11; Act No. 298 of 1926).

Under Act No. 139 of 1922, § 11, relative to materialman's lien, since repealed by Act No. 298 of 1926, proof of privileges granted was required to be recorded within 30 days after completion of work, though no time was stipulated by such section.

3. Mechanics' liens ⬅281(5)—Evidence held sufficient to show materialman's recordation of proof of privilege under statute providing lien (Act No. 139 of 1922, § 11).

Proof that material for construction was furnished continuously to within 20 days from recordation by materialman, of proof of privilege under Act No. 139 of 1922, § 11, relative to materialmen's liens, *held* sufficient to show that such recordation was within 30 days after completion of work as required by such statute.

4. Mechanics' liens ⬅159—Privilege properly recorded under materialman's lien statute affected third persons during period in which it was not of record (Const. art. 19, § 19).

Where privilege was recorded by lumber company under statute providing for materialman's lien within time and in manner prescribed by such statute, it affected third persons during period in which it was not of record under Const. art. 19, § 19.

5. Mechanics' liens ⬅212(1)—Materialman taking notes and mortgage did not waive lien privilege, where agreed cash payment was not made, but notes and mortgage should be canceled if lien is enforced (Act No. 139 of 1922).

Materialman, having properly recorded privilege under Act No. 139 of 1922, providing for materialman's lien, *held* not to have waived privilege by accepting second mortgage notes, where landowner failed to make agreed cash payment, but such notes and mortgage should be canceled if materialman enforces lien.

6. Mechanics' liens ⬅51—Materialman is not entitled to privilege as furnisher of material for money advanced to pay labor (Act No. 139 of 1922, § 1).

Materialman is not entitled to privilege as furnisher of material for money advanced land-

owner to enable her to pay labor, under Act No. 139 of 1922, § 1, but such materialman is entitled to personal judgment for such amount.

O'Niell, C. J., dissenting in part.

Appeal from First Judicial District Court, Parish of Caddo; F. X. Ransdell, Judge.

Suit by the Central Lumber Company, Inc., against Mrs. Lillian Schroeder, in which the Prudential Insurance Company and another filed interventions. Judgment for plaintiff, and defendant and interveners appeal. Amended and affirmed.

J. F. Phillips, of Shreveport, for appellants Prudential Life Ins. Co. and Roger Lawson.

H. V. Booth, of Shreveport, for appellant Schroeder.

Dimick & Hamilton, of Shreveport, for appellee.

OVERTON, J. Plaintiff instituted this suit to enforce a building lien, amounting to $3,105.98, as furnisher of material on lots 1, 2, 3, and 4 of block 11 of the Queensborough Annex subdivision of the city of Shreveport. Defendant answered the suit, and the Prudential Insurance Company, as the holder of a mortgage for $3,500 on lot 1 of said block; and Roger Lawson, who acquired lot 1 from defendant, after the granting of the mortgage in favor of the Prudential Insurance Company, filed interventions opposing the allowance of the lien, claimed by plaintiff, in so far as the lien affects lot 1, in which lot they are interested.

The record discloses that defendant's home, which she had occupied for some time, was destroyed by fire in the latter part of June, 1924. Desiring to rebuild, she applied to plaintiff, very shortly thereafter, to furnish her with material with which to do so. Plaintiff agreed to furnish the material. The building was erected on lot 1 of the property, and in connection with it a small outhouse or garage was erected on the same lot. When the building was about completed, though according to our appreciation of the evidence not quite completed, defendant, thinking that she might sell lot 1, concluded to build a small two-story building on lot 2 of the property, to serve as a combination garage and dwelling, and applied to plaintiff to furnish her with material for that purpose. This the plaintiff consented to do and did do. While the combination garage and dwelling was being erected, plaintiff also furnished defendant, on her application, with material to fence lots 2 and 4 of the property. The buildings and improvements were constructed by defendant by employing day labor, and not by letting the work to a contractor.

Not long after the residence on lot 1 was completed, defendant borrowed from the Prudential Insurance Company, one of the interveners herein, $3,500, and secured the same by mortgage on that lot with the improvements thereon. This mortgage was promptly recorded. About two weeks later, defendant appeared before a notary public and executed a second mortgage on lot 1, in favor of plaintiff, to secure notes for $1,472.85, caused the mortgage to be recorded, and delivered the notes to plaintiff, who, it is contended, accepted them in settlement of the materials furnished to construct the residence on lot 1, and is therefore estopped to assert the lien claimed by it on lot 1 and the improvements thereon. Five days later, to wit, on December, 8, 1924, defendant sold lot 1 with the improvements thereon to one of the interveners herein, Roger Lawson, and the sale was recorded on the same day. On the day following this sale, plaintiff recorded in the mortgage records its claim against lots 1, 2, 3, and 4, treating the four lots as a single piece of property, and the furnishing of material for their improvement as a single transaction.

[1] The case presents several questions for determination. One of these is whether de-

fendant's transactions with plaintiff with reference to the furnishing of material for the erection of the residence, the combination garage and dwelling, and the fencing of lots 3 and 4 were separate and distinct transactions, or whether they constituted a single continuous transaction for the improvement of what was considered a single piece of property, consisting of four lots, and not as the furnishing of material for distinct improvements on separate pieces of property. The determination of this question assumes some importance, especially, among other things, in view of the date on which plaintiff recorded proof of the privilege, which it claims. In our view the furnishing of the material should be viewed as one continuous transaction for the improvement of a single piece of property. Prior to the burning of defendant's home, which caused her to rebuild, the four lots were occupied by her as her home, were generally referred to as her home place, and seem to have been treated as one piece of property in prior dealings between plaintiff and defendant. The combination garage and dwelling is properly viewable as an adjunct of the dwelling proper, and, as constituting, with the fencing, a part of one improvement. We shall therefore view the furnishing of the material as one continuous transaction for the construction of a single improvement.

[2, 3] So viewing the furnishing of the material, the next question to be considered is whether plaintiff recorded proof of the privilege claimed by it within the time prescribed by law. At the time the buildings were constructed, Act 139 of 1922, which has since been repealed by Act 298 of 1926, was in force. Since the work was done by defendant personally, and not by means of a contractor, the right of the furnisher of material to a privilege is controlled primarily by section 11 of the act; that is, the act of 1922. However, section 11 is silent as to the time within which proof of the privileges granted shall be recorded. But in Capital Building & Loan Association v. Carter, No. 28275, ante, p. 388, 113 So. 886, it was held that the privileges granted by that section must be recorded within 30 days from the completion of the work. Applying this rule, we have no hesitancy, in view of the fact that the work done should be regarded as a single improvement, in holding that the sworn statement establishing the privilege was recorded well within the 30 days from the completion of the entire work, as contemplated by law. In fact, the record discloses that the material was furnished continuously to within 20 days from the recordation of the proof of the privilege. This shows that the work was not completed until later, and hence that the privilege was recorded well within the time contemplated by law.

[4, 5] Since the privilege was recorded within the time and in the manner prescribed by law, it affected third persons during the period in which it was not of record. Constitution, art. 19, § 19; Gleissner v. Hughes, 153 La. 133, 95 So. 529; Capital Building & Loan Association v. Carter, supra. Hence, unless plaintiff, as contended, has waived its privilege so far as relates to lot 1 with the residence thereon, by accepting the notes, secured by the second mortgage, executed by defendant, Mrs. Schroeder, and mentioned above, in lieu of that privilege, the rights of the Prudential Insurance Company are affected by the privilege, and Lawson acquired lot 1, subject to plaintiff's right of privilege thereon. However, the evidence adduced does not disclose the waiver, contended for, though it does show an agreement, made by plaintiff with defendant, to waive the privilege on lot 1, under certain conditions. It seems that defendant was indebted to plaintiff in a sum in addition to the present indebtedness, and, in order to en-

able her to negotiate a loan on the property, plaintiff promised defendant to waive its privilege as furnisher of material on lot 1, on condition that she would pay plaintiff $2,305 cash, and that plaintiff would take a second mortgage on lot 1 for $1,472.85, to secure the balance of the indebtedness. Defendant executed a second mortgage on that lot for $1,472.85, which, it may be said, does not appear to have been signed by the mortgagee, and delivered the notes representing that amount to plaintiff. Plaintiff received the notes, but without crediting them against defendant's account, plaintiff awaiting the fulfillment of the remainder of the agreement, by the making of the cash payment, before so crediting them. The cash payment has never been made. While the notes should be surrendered—a duty which plaintiff does not seem to question—still we think that the evidence does not show a waiver of the privilege, for the reason that defendant failed to comply with the condition to make the cash payment. To hold that a waiver was effected would be to force a waiver upon plaintiff contrary to the condition of the agreement. It may be said that it does not appear that plaintiff made the slightest representation to either of the interveners that it had waived any rights it might have to a privilege on lot 1.

The lower court rendered judgment in favor of plaintiff and against defendant for $3,105.98, with legal interest thereon from October 1, 1924, and with recognition of plaintiff's lien and privilege on all four of said lots, as furnisher of material, thereby impliedly rejecting the opposition of interveners to the recognition and enforcement of plaintiff's privilege, as against lot 1.

[6] The judgment will have to be amended in two respects. One of these is that it includes items amounting to $465, consisting of money advanced by plaintiff to defendant, to enable her to pay labor, for which the judgment awards a privilege as furnisher of material. While plaintiff is entitled to judgment against defendant for that amount, yet it is not entitled to a privilege as furnisher of material for that sum. The statute grants that privilege to those furnishing material, machinery, or fixtures for the construction of buildings and other works, and not to those advancing money for such purposes. Section 1, Act 139 of 1922. Hence the amount for which the privilege is allowed will have to be reduced to the extent of $465, though judgment was properly rendered against defendant personally for that sum. The second respect in which the judgment will have to be amended is by ordering plaintiff to surrender to the clerk of court the two notes, aggregating $1,472.85, made by defendant, and secured by said second mortgage, recorded in book 31 of Mortgages, p. 576, of the parish of Caddo, to the end that they and the mortgage securing them may be canceled, which cancellation appellants request in the alternative.

For the reasons assigned, the judgment appealed from is amended by reducing the amount for which said privilege was allowed from $3,105.98 to $2,640.98, and by ordering plaintiff to surrender to the clerk said two second mortgage notes to the end that they and the mortgage securing them may be canceled, which cancellation is hereby ordered, and as thus amended said judgment is affirmed, plaintiff to pay the costs of this appeal.

O'NIELL, C. J., is of the opinion that the plaintiff's claim was not recorded in time to affect the rights acquired by the interveners, for the reasons given in his concurring opinion in Capital Building & Loan Association v. Carter, No. 28275, ante, p. 388, 113 So. 886.