OVERTON, J.
 

 On July 6, 1925, Mrs. Adrian Montegut contracted to purchase from the Picheloup Realty Company lots 38, 39 and 40 in a certain square located in the city of New Orleans. This contract was recorded in the conveyance records on July 23, 1925. A few days later Mrs. Montegut entered into a written contract with E. J. Stewart & Co. to build a residence on lot 38 and one on
 
 *372
 
 lots 39 and 40, together with the necessary outhouses. This contract was not recorded, nor was the bond demanded by law of the contractor exacted by the owner.
 

 On October 8, 1925, although the Picheloup Realty Company had bound itself to seE these lots to Mrs. Montegut, that company conveyed them to Morris P. Lecompte. On the same day Lecompte transferred the property to Fineran, and on November 20, 1925, Fineran sold it to the Union Homestead Association, the plaintiff herein. On the day that the Union Homestead Association purchased the property, it sold lots 39 and 40 to Mrs. Monte-gut, who had contracted to purchase them from the Picheloup Realty Company, and lot 38, which Mrs. Montegut had also contracted to purchase from that company, to Henry B. Foster, making both sales partly for cash and partly on terms of credit, with the de-' ferred payments in each instance secured by a vendor’s privilege and a special mortgage, which were duly and promptly recorded.
 

 At the time the Union Homestead Association purchased and resold, there -was no certificate of record accepting the work done under contract. In fact, at that time, the buildings, though practically completed, were not entirely ■ finished, for there still remained some work to be done on each, which was thereafter promptly done by the contractor in the fulfillment of his contract. Without reference, however, as to whether the buildings were then completed, it may be said that no acceptance of the work was ever placed of record.
 

 Following the recordation of the vendor’s liens and special mortgages in favor of the Union Homestead Association various furnishers of- material and subcontractors recorded liens in the mortgage records against both pieces of the property, involved herein. Against the property of record in the name of Mrs. Montegut, three of the liens, now before us, were recorded in December, 1925, two in January, 1926, one in March of that year, and against the property of record in the name of Foster, the two liens thereon were recorded in December, 1925.
 

 Both Mrs. Montegut and Foster failed to pay the installments and interest on the mortgages granted by them, and on March 10, 1927, the Union Homestead Association instituted proceedings by executory process to foreclose the mortgages and vendor’s liens, and the two pieces of property were adjudicated to it for sums scarcely more,than sufficient, if sufficient, to pay the mortgages and vendor’s privileges held by the association.
 

 As there was insufficient to pay all who had recorded privileges and m'ortgages against ' the property, the civil sheriff caused all who had such claims of record to be ruled into court, for the purpose of ascertaining to whom the proceeds of the sale should be paid. Five of those so cited, who claimed privileges of record, as materialmen, against the property, which prior to the adjudication stood in the' name of Mrs. Montegut, appeared and asserted their privEeges, and two-of them, who claimed similar privileges on the property, which, prior to that adjudication stood in the name of Foster, appeared and asserted the privileges claimed by them, all urging that they are entitled to payment in preference to the Union Homestead Association.
 

 The association contends that the foregoing claimants are not entitled to payment by priority over it: (1) Because Mrs. Montegut was not the owner of the three lots upon which the residences were erected, when the contract for -their erection was signed and the buildings were constructed, and it was not until later that she became the owner of two of the lots; (2) because the privileges claimed were not recorded within the time
 
 *374
 
 prescribed by law; and (3) because the privileges asserted were recorded after its vendor’s privilege.
 

 The ultimate question to be decided on this appeal is whether the Union Homestead Association is entitled to payment by preference over the furnishers of material. Since the vendor’s lien and special - mortgage, claimed by the association, were recorded before the claims of the furnishers of material, though after the building contract had been entered into, one of the questions presented is: Are the privileges and mortgages of the association affected, as to priority of payment, by these liens?
 

 In Capital Building & Loan Association v. Carter, 164 La. 388, 113 So. 886, it was said that “a lien or privilege may affect third persons during the period in which it is not of record, if, eventually, it is recorded in the manner and within the time prescribed by law.” This ruling was based primarily on section 19 of article 19 of the Constitution of 1921, which provides that “no mortgage or privilege on immovable property, or debt for which preference may be granted by law, shall affect third persons unless recorded or registered in the parish where the property is situated, in the manner and within the time prescribed by law.” Where, therefore, a privilege or a mortgage is recorded in the parish where the property is situated, in the manner and within the time prescribed by law, it was said that during the period in which it was not of record it might affect third persons. We adhere to that ruling. However, it may be said that in that case the privileges of the furnishers of material were not recorded within the time fixed by law.
 

 In the case of Central Lumber Co. v. Schroeder, 164 La. 759, 114 So. 644, the same doctrine was held as was-held in the Capital Building & Loan Association Case. In that case, as the lien of the furnisher of material was recorded in the manner and within the time prescribed by law, it was held that the lien affected third persons during the period in which it was not of record.
 

 However, the doctrine announced in -those cases is not decisive of the present case. In them there was no question to what property the liens attached, if they were found valid. The facts there involved did not admit of any such question. In the present ease they do. It is here contended, among other things, that Mrs. Montegut did not become the owner of lots 39 and 49 until the building thereon had been constructed, and that she never did become the owner of lot 38, and therefore that the liens claimed, under the building contract, never did attach to the lots themselves, which we may say were sold with the buildings without separate appraisements of the lots and the buildings.
 

 At the time Mrs. Montegut entered into the contract for the erection of the buildings, she had only an agreement with Pieheloup & Co. to sell her the property for $4,909 cash, The agreement provided for the depositing of $400 to be applied on the purchase price, for the passing of the deed within 90 days, for the payment of 8 per cent, interest per annum on the purchase price for any delay attributable to Mrs. Montegut, and for the .delivery of immediate possession for building purposes.
 

 This agreement was a mere promise to sell and did not convey title to Mrs. Montegut. Trichel v. Home Ins. Co., 155 La. 459, 99 So. 403; Succession of Fay, 161 La. 1022, 109 So. 824. Since Mrs. Montegut did not have title to the lots when the building contract was entered into, and never did, so far as appears, own one of them, nor acquire title to the remaining two, until, with the exception of a few details, the' buildings under erection
 
 *376
 
 thereon were completed, and since the claims of the furnishers of material arose, save for a trifling amount, during the period, when she was not the owner of any of the lots, the question is presented whether the liens, growing out of the building contract, attached to the lots, for the lots were sold confusedly with the buildings; that is, without separate appraisements.
 

 Touching upon that question, section 3 of Act 139 of 1922, the act in force when the buildings were erected, provides:
 

 “Where any work as hereinabove set forth is done on buildings or other improvements made, where the person for whom the work is done or with whom the contract is made, or by whom the work is done is not the owner of the land upon which the work is located, then the liens and privileges created and established by this act shall operate upon whatever right said person having the work done, or doing the work, may have to the use of the land as lessee, usufructuary or otherwise ; and said lien and privilege shall operate against the lease such person holds if there is one. * * * ”
 

 Under another section of the statute a privilege is given to the furnishers of material, laborers, and others on buildings erected. We therefore think that, under the section of the statute quoted in part above, the claimants herein for privileges, growing out of the building contract, acquired them only on the respective buildings for the construction of which they furnished material, and perhaps on the right of occupancy of the lots, acquired by Mrs. Montegut, so long as the right thereby acquired continued to exist, but not upon the lots themselves, as Mrs. Monte-gut was not the owner of them. As to the two lots later acquired by Mrs. Montegut, we should doubtless hold otherwise, were this a matter merely between Mrs. Montegut and the building lien claimants, for then it might be said that these privileges attached to the lots the moment that she acquired them, but we do not feel justified in so holding, should that be the result, to the prejudice of a third person, holding a vendor’s privilege, who acquired the privilege, the moment the owner of the building became the owner of the lots upon which the building was located.
 

 When the Union Homestead Association foreclosed its vendor’s privilege on the house and lots sold by it to Mrs. Montegut, and on the building and lot conveyed by it to Foster, it did not have separate appraisements made of the lots and the buildings, for the obvious reason that its vendor’s privilege attached to both, and no such appraisements were made or demanded by any one. Therefore, as the claimants for privileges herein growing out of the building contract had no privileges on the lots, it follows that they lost the privileges they had by permitting the buildings on which they had privileges to be sold without separate appraisements of the lots and buildings. C. C. art. 3268; Reusch & Co. v. Keenan & Slawson, 42 La. Ann. 419, 7 So. 589; In re J. D. Connell Iron Works Co., 138 La. 702, 70 So. 617; Sundberry v. Bertie Sugar Co., 145 La. 700, 708, 82 So. 857, on rehearing; Baton Rouge Rice Mill, Inc., v. Fairbanks, Morse & Co., 164 La. 729, 114 So. 633.
 

 We find it unnecessary to consider section 8 of the act of 1922, relative to the rank of privileges, for that section has in contemplation those cases, ás relate to the vendor’s, privilege, where the privileges, growing out of the erection or repair of the building, attach to both the building and the land. It may be said, however, that where these privileges do not attach to the land, and the vendor’s privilege attaches to both the land and
 
 *378
 
 the building, the burden is not thrown by the section on the vendor to demand a separate •appraisement.
 

 In this connection it may be also said that we find nothing in the law that would justify us in holding that the privilege for the small amounts that may have attached to both the building and the two lots finally acquired by Mrs. Montegut, for material furnished after she had acquired the lots, are entitled to priority over the vendor’s privilege, in a case such as this, where, when the vendor acquired the lots, with the building thereon practically completed, the person erecting it was not the owner of the lots, and became the owner of them only by the act giving rise to the vendor’s privilege, and therefore, as to those small claims, it was unnecessary for the vendor to provoke a separate appraisement.
 

 The trial judge rendered judgment in each of these consolidated cases, directing that the claimants recognized by him therein, and asserting building liens on the fund to be distributed, be paid by preference over the vendor’s privilege, asserted by the Union Homestead Association. These judgments will have to be amended.
 

 For the reasons assigned, the judgments in these consolidated cases are amended, so as to direct that the Union Homestead Association be paid out of the fund to be distributed the amount of its vendor’s privilege, with interest and attorney’s fees, as recognized in the judgment for executory process, by preference over said claimants asserting building liens, and recognized by the lower court; appellees to pay the costs.
 

 ROGERS, J., takes no part.