On Rehearing.
 

 O’NIELL, C. J.
 

 In the original opinion' rendered in this case it was conceded that, under the doctrine announced in Capital Building & Loan Ass’n v. Carter, 164 La. 388, 113 So. 886, and Central Lumber Co. v. Schroeder, 164 La. 759, 114 So. 644, the furnishers of materials would have liens superior in rank to the mortgage and lien of the homestead association if Mrs. Montegut had been the owner of the three lots when she entered into the contract with E. J. Stewart & Co. to construct the buildings, and when they were being constructed. The doctrine of the decisions cited is that, if a materialman’s claim is recorded within the time prescribed by the Act 139 of 1922 to affect third parties, the recording has a retroactive effect against mortgages previously recorded. The time within which materialmen’s claims should be recorded, to affect third parties, is, according to section 2 of the statute, within 30 days after the recording of a notice of acceptance of the work. As no such notice was ever recorded in these cases, the claims of the materialmen were recorded in time to preserve their liens.
 

 The only reason why it was decided on the first hearing of these cases that the materialmen did not have liens was that Mrs. Montegut did not own the lots at the time when she entered into the contract with E. J. Stewart & Co. for the construction of the buildings. She had, at that time, a recorded contract to buy the lots from the Picheloup Realty Company for $4,000, and it was stipulated in the contract that she should have “immediate possession for building purposes.” Therefore, when the homestead association examined the title, with the view of making a loan upon the property, for the purpose of paying for the construction of the buildings on these lots, the association was informed that, at the time when the buildings were constructed, Mrs. Montegut was in possession of the lots for the purpose of constructing the buildings, and under a contract to buy the
 
 *380
 
 lots, and, as a- matter of fact, the lots were transferred by tbe Picbeloup Realty Company to Mrs. Montegut — in a roundabout way — before tbe buildings were completed, and pursuant to tbe recorded contract on tbe part of tbe Picbeloup Realty Company to transfer the lots to Mrs. Montegut. Tbe Picbeloup Realty. Company transferred tbe lots to Maurice Lecompte, who was tbe attorney for E. J. Stewart & Co., and, on tbe same day, Lecompte. transferred them to Joseph J. Fineran, who-was tbe secretary of E. J. Stewart & Co. Fineran transferred the three lots to tbe homestead association, and on tbe same day tbe homestead association transferred two of tbe lots, 39 and 40, with’ tbe buildings thereon, to Mrs. Montegut, and transferred tbe other lot, 38, with tbe building on it, to Henry B. Foster, who was an employee of E. J. Stewart & Co., and who gave Mrs. Montegut a counter letter to the effect that tbe title was taken in bis name for her account. E. J. Stewart testified that Lecompte and Fineran were parties interposed “for tbe purpose of financing tbe work,” and that tbe reason why tbe title to one of tbe lots, with tbe building on it, was placed in tbe name of Foster, instead of Mrs. Montegut, was to avoid making too large a loan to Mrs. Montegut. Inasmuch as the homestead association was one of tbe parties interposed in these transactions, by which tbe title was conveyed from the Picbeloup Realty Company to Mrs. Montegut, in fulfillment of the contract between them, which Was on record when tbe homestead association entered into tbe transactions, the latter is not in a position to plead successfully that Mrs. Montegut did not own the lots when she em tered into tbe contract with E. J. Stewart & Co. Tbe third section of tbe statute makes provision for a case like this, viz.:
 

 “Where any work as hereinabove set forth is done on buildings or other improvements made, where the person for whom tbe work is done or with'whom tbe contract is made,, or by whom tbe work is done is not tbe owner, of tbe land upon wbich tbe work is located, then tbe liens and privileges created and established by this Act shall operate upon whatever right said person having tbe work done, or doing tbe work, may have to tbe use of tbe land as lessee, usufructuary or otherwise;, and said lien and privilege shall operate against tbe lease such person bolds if there is one,” etc.
 

 Accordingly, tbe liens of tbe material-men in this case affected tbe right which Mrs. Montegut bad to possess tbe lots for tbe purpose of building on them, and to become the-owner of them, at the price stipulated; and when that right developed into ownership of tbe lots, tbe materialmen’s liens affected the' lots themselves. And tbe important fact, as far as the homestead association is concerned,, is that Mrs. Montegut’s right of possession,, and tbe extent of her right, was a matter of record. •
 

 According to tbe fifth section of tbe statute, Mrs. Montegut’s failure to record tbe building, contract, and failure to obtain and record a bond, made her liable to those who sold materials to the contractor; and their liens, being recorded within tbe time stipulated in tbe second section of tbe statute, bad effect against third parties.
 

 Tbe eighth section of the statute declares. that tbe liens or privileges thereby created are superior to. all other claims against tbe building and the land on which it is situated, except taxes, local assessments for public improvements, and claims secured by a vendor’s lien on tbe land recorded previous to tbe building contract; and that tbe bolder of a vendor’s lien shall be entitled to a separate appraisement of tbe ground and of the building or other work thereon, in tbe event of a
 
 *382
 
 sale of the property, so that the holder of the vendor’s lien shall be paid in proportion to the appraisement of the land, and the holders of the other liens in proportion to the appraisement of the building. That is the situation here. The liens of the materialmen are superior to the ordinary mortgage held by the homestead association, even though the mortgage was recorded ahead of the materialmen’s claims; but the materialmen’s liens are superior to the vendor’s lien held by the homestead association, only on the building, and are inferior to the vendor’s lien on the land. The consequence is that there should have been a separate appraisement made of the land and of the improvements, in each case, before the sale; and the proceeds of the sale, which were not sufficient to pay all of the liens,-should have been apportioned between the homestead association on the one hand, and the materialmen on the other, in the ratio which the appraisement of the lot or lots, and the appraisement of the improvements, respectively bore to the proceeds of the sale, in each case. The materialmen contend, according to the language of the eighth section of the statute, that the burden was upon the homestead association, as holder of the vendor’s lien, to ask for a separate appraisement. The homestead association contends that, as its lien affected the whole property, and as it had the right to seize and sell the property as a whole, the burden was upon the material-men to demand a separate appraisement. As the proceeds of the sale are yet in the hands of the sheriff, it is not too late, or impracticable, to have a separate appraisement made, as of the date of the sale. New Orleans Land Co. v. Southern States Fair-Pan-American Exposition Co., 143 La. 884, 79 So. 525. It is not necessary to decide whose duty it was to demand a separate appraisement. Our conclusion is that the two cases should be remanded for the purpose of having the separate appraisements made, and the proceeds of the sales apportioned accordingly.
 

 Unfortunately, for them, two of the materialmen who obtained judgments in their favor in the court below, and whose judgments were annulled by the decree of this court, did not apply for a rehearing. We refer to the National Sash & Door Company and the United Hardware Company, who were appellees in the case of Union Homestead Association v. Henry B. Foster, No. 28923. As their interest in the matter was entirely separate and distinct, the judgment which was rendered against them is final. Succession of Morere, 117 La. 543, 42 So. 132; Lahn & Co. v. Carr, 120 La. 797, 45 So. 707.
 

 These cases are ordered remanded to the civil district court for the purpose of having a separate appraisement made of the land and of the improvements, in each case, as of the date of the sheriff’s sale, in order to distribute the proceeds in the proportions stated in section 8 of Act 139 of 1922, p. 293. The costs of this appeal are to be paid by the appellees, the liability for other costs being dependent upon the final judgment. The right is reserved to the Union Homestead Association to apply for a rehearing.
 

 OVERTON, J., concurs in decree and assigns reasons.
 

 ROGERS, J., takes no part.