JACKSON HOMESTEAD ASSN. v. ZIMMER
(J. J. Clarke Company, Inc., Defendant in Rule)

(April 13, 1931. Opinion and Decree.)
(May 11, 1931. Rehearing Refused.)
(June 22, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

Wisdom & Sokolsky and John Minor Wisdom, of New Orleans, attorneys for plaintiff, appellee.

Dart & Dart and Leo L. Dubourg, of New Orleans, attorneys for defendant, appellant.

JANVIER, J. This is a contest over the distribution of a portion of the proceeds of the sale of certain real estate sold by the civil sheriff under executory process instituted by the mortgage creditor, Jackson Homestead Association.

J. J. Clarke Company, Inc., asserts its prior right to so much of the proceeds as is necessary to satisfy its claim for the unpaid balance due for certain building material used for the construction of the improvement erected on the real estate in question.

The important facts are as follows:

High Grade Realty Company was the owner of certain unimproved real estate, which it agreed to sell to one Matthew H. Zimmer. The said agreement to sell was not placed of record in the parish of Orleans, in which the realty was situated.

Before taking title to the real estate Zimmer contracted for the erection of a house thereon with one Ernest Charbonnet, a contractor. However, the building contract does not appear to have been formally prepared or executed, and it was not recorded.

Upon completion of the work, Zimmer, finding himself in need of funds to comply with his obligation to purchase the property, applied to Jackson Homestead Association for a loan. The loan was approved, and thereafter, in accordance with custom and with its rules, the homestead association purchased the property from High Grade Realty Company, paying cash therefor, and then sold it to Zimmer, retaining vendor's lien and mortgage to secure repayment to it of the amount of its loan.

In the meantime, the J. J. Clarke Company, Inc., had recorded in the mortgage office a lien for $317, being the amount of the unpaid balance due to it for material used in the erection of the improvement. The said claim, however, was recorded only against Zimmer, and there appeared in the mortgage records no recordation of the said claim as against High Grade Realty Company, the owner of the property. When the homestead association purchased the property from the realty company, it obtained all usual certificates in the name of the vendor, High Grade Realty Company, and, of course, on the said certificates no note was made to show any incumbrance resulting from the recordation of the lien in favor of the Clarke Company, Inc., and against Zimmer.

The only right which Zimmer had at the time of the recordation of the lien by Clarke Company, Inc., was to purchase the property from the High Grade Realty Company, and that right in no way could be effective to any extent against third persons, since it was not placed of record.

Therefore, unless there be any statute

giving to materialmen who furnish supplies or material under the circumstances above set forth a lien against the improvement, or against the land, it is manifest that the Clarke Company has only a personal claim against Zimmer, and cannot assert any lien to the prejudice of the holder of the vendor's lien and mortgage, properly and seasonably recorded, since the holder of the mortgage, in accepting it, relied upon the certificates to which we have referred, and which made no mention of any claim of the Clarke Company.

But counsel for the Clarke Company maintains that, under the provisions of Act 298 of 1926, the rights of his client are protected, and that under that act a lien recorded against a prospective purchaser for materials sold to him is effective against and primes the rights of a mortgagee, even though the contract between the owner and the prospective purchaser be not registered or recorded.

The pertinent part of section 11 of Act No. 298 of 1926, which is the section of the statute with which we are concerned, reads as follows:

"Where any work as hereinabove set forth, is done or buildings or other improvements made, where the person for whom the work is done or with whom the contract is made, or by whom the work is done, is not the owner of the land upon which the work is located, then he shall be subject to all the obligations that are made incumbent on the owner by this act, and the liens and privileges created and established by this act shall operate upon whatever right said person having the work done or doing the work may have to the use of the land as lessee. * * *"

It is our belief that the statute cannot be construed as contended for by appellant. All that was intended by the section quoted was to give to the furnisher of materials the right to a lien effective only to the extent of the right of the tenant or lessee in or to the property. The mere fact that one person holds an unregistered and unrecorded right to purchase the real estate of another does not give to a third person who furnishes material any right against another innocent party purchasing from the owner. or lending money on the property on the faith of clear certificates. Of course, as to the owner himself the situation might be different, if, by his permission, the prospective purchaser was afforded the opportunity to erect improvements, because the owner, by granting such permission, may, under certain circumstances, create an estoppel which will prevent him from contesting the rights of the materialman.

Counsel for appellant contends that Union Homestead Association v. Montegut et al., 168 La. 369, 122 So. 68, 71, is authority for the view contended for by him, but we are unable to agree with him, because in that case the agreement of sale had been recorded, and in that agreement of sale the prospective purchaser was given the right to take immediate possession for the purpose of at once commencing construction. Therefore the homestead which purchased the property had knowledge both of the agreement of sale and of the fact that a building was to be erected by the prospective purchaser prior to transfer of title.

The court in that case, with reference to the prospective purchaser, said:

"She had, at that time, a recorded contract to buy the lots from the Picheloup Realty Company for $4,000, and it was stipulated in the contract that she should have 'immediate possession for building purposes.' Therefore, when the homestead association examined the title, with the view of making a loan upon the property, for the purpose of paying for the con-

struction of the buildings on these lots, the association was informed that, at the time when the buildings were constructed, Mrs. Montegut was in possession of the lots for the purpose of constructing the buildings, and under a contract to buy the lots. * * *"

And in the same decision, Union Homestead Assn. v. Montegut et al., 168 La. 380, 122 So. 68, 72, we find:

"And the important fact, as far as the homestead association is concerned, is that Mrs. Montegut's right of possession, and the extent of her right, was a matter of record."

In that case (Union Homestead Assn. v. Montegut), the statute involved (section 3 of Act No. 139 of 1922) created in favor of a furnisher of material a lien and privilege effective against such right as the "person having the work done, or doing the work, may have to the use of the land as lessee, usufructuary or otherwise." Here, however, the statute (Act No. 298 of 1926) in section 11 limits the right to a lien in favor of a furnisher of supplies, and makes it effective only against the right of a lessee who undertakes to do work on land belonging to another, for we find that, from the later act (Act No. 298 of 1926), the words "usufructuary, or otherwise," which words appeared in the act of 1922, are omitted.

Privileges must be strictly construed, and, if there were ambiguity in the statute, under which the privilege is claimed, we should resolve the doubt against him who claims the privilege.

While the facts in Hearne v. Victoria Lumber Co., Ltd., 131 La. 646, 60 So. 22, appear to be very similar to those now under consideration, still there seems to be a fundamental difference between that case and this, in that there Hearne, the purchaser of the property, who was seek-

ing to defeat the claim of the furnisher of supplies, knew when he bought that "a privilege was claimed by Victoria Lumber Company," whereas here there was no knowledge, actual or constructive, that it was attempted to assert a lien. We do not find that Capital Bldg. & Loan Association v. Carter, 164 La. 388, 113 So. 886, 887, is analogous, because there it was held that, if a claimant is entitled to a lien, he may record his lien at any time within the period provided by law, and that it will be effective even against third parties. Here we do not believe that the claimant is entitled to a lien at all, and it cannot be asserted, in view of the fact that the agreement of sale, which would have given to the world knowledge of the fact that Zimmer had an interest in the property, was not registered or recorded. Had there been on the public records under the name of the owner any notation of a right of Zimmer in or to the property, a prospective purchaser or lender would have been put on his guard and could have obtained certificates in the name of Zimmer.

Appellant suggests that the fact that the Jackson Homestead Association required a lien bond before it accepted title to the property is an indication that it had knowledge that there were in existence claims against the property. This does not necessarily follow. In Capital Bldg. & Loan Assoc. v. Carter, supra, our Supreme Court said:

"The furnishing of the bond was merely a personal matter between plaintiff on the one side and McKendrick and the Indemnity Insurance Company of North America on the other side."

We think that the really important question is whether or not an innocent party may purchase property, or may lend money on property, and· in doing so rely on the

public records, and our view that he may do so is confirmed by many decisions of our Supreme Court:

"One who, upon faith in the public records, purchases real estate, the recorded title to which stands in the name of his vendor, is entitled to be protected in his purchase against any claims or equities arising out of the previously existing relations between his vendor and the latter's author or other persons." Breaux v. Royer, 129 La. 894, 57 So. 164, 38 L. R. A. (N. S.) 982.

"A purchaser of real estate in good faith from the owner of record is not affected by equities which may have existed between former owners of the property and third persons, but which do not appear of record." Duson v. Roos, 123 La. 835, 49 So. 590, 131 Am. St. Rep. 375.

"The conveyance records are the only thing to which one dealing with real estate needs to look, under the repeated decisions of this court, nor can innocent third persons purchasing upon the faith of the public records be bound by any knowledge except such as is disclosed by such records." Cole v. Richmond, 156 La. 262, 100 So. 419, 423.

That a mortgagee, just as a purchaser, may rely on the mortgage records, has also been often decided, notably in Boyer v. Joffrion, 40 La. Ann. 657, 4 So. 872, 873, in which is found the following:

"No third person, under the peremptory provision of the law, can, as a rule, be bound by an alienation of real estate in or to which he may have some title or claim, unless it appear from the proper public records that his debtor, whoever he be, has parted with his title, or has incumbered his estate; and even then only to the extent, if any, expressly prescribed by law. Moore v. Jourdan, 14 La. Ann. 414.

"A different interpretation of the law would prove destructive of the benefits which it intends to confer, and would place capitalists at the mercy of their debtors, and jeopardize loans of money on mortgage security.

"We therefore conclude that a money lender may safely deal, as far as the question of ostensible ownership goes, with one whose title to real estate appears on the proper public records, and that he cannot be injuriously affected by any anterior transfer of the property, unless the same be made by the ostensible owner, or by his authorized agent, or by judicial authority, and the transfer has become patent by proper registry. No other notice can prove knowledge."

The court below rendered judgment in favor of Jackson Homestead Association, and ordered canceled the inscription of the lien claimed by the Clarke Company. Since we think the said court is correct, it is ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed, at the cost of appellant.