142 So. 132

SMITH v. SMITH et al.

No. 31167.

April 25, 1932.

Wilkinson, Lewis & Wilkinson, of Shreveport, and White, Holloman & White, of Alexandria, for appellant Ætna Casualty & Surety Co.

Cline, Plauche & Thompson, of Lake Charles, for appellee.

ODOM, J.

In October, 1925, W. H. Smith, Jr., entered into a contract with the Louisiana

highway commission and the parish of Calcasieu to do certain road work and to erect timber bridges at or near the Sabine river on the Vinton-Orange highway. The contract was reduced to writing, and a bond given with the Ætna Casualty & Surety Company as surety in conformity with the provisions of Act No. 224 of 1918.

The present suit is by James B. Smith against the contractor and his surety for $2,804.38, alleged to be due for lumber and timbers furnished by plaintiff and used by the contractor in the construction of the bridges.

In answer to a rule to show cause why his petition should not be dismissed for vagueness, plaintiff alleged that, under the terms of the contract which he had with the contractor, he agreed to and did purchase from various lumber companies the necessary lumber and timbers to build the bridges, and resold the same to the contractor who used it in constructing the work, but failed to pay the price.

The contractor and his surety answered, denying generally the allegations of plaintiff's petition. There was judgment for plaintiff against the contractor and the surety company in solido for $1,774.23, with interest and attorneys' fees. The surety company appealed. Plaintiff answered the appeal praying that the judgment be amended by increasing the amount to $2,804.38, the amount prayed for.

1. Plaintiff predicates his suit against the surety on the contractor's bond upon the proposition that he furnished to the contractor material which was used in the construction of the work, which material was

not paid for, and that the surety is bound under the terms of the bond. The defense urged by the surety is that plaintiff was not in fact a furnisher of materials, but that he loaned to the contractor money with which to purchase the material; that the material was purchased by the contractor and paid for with the funds advanced.

This contract was entered into and the bond given pursuant to the provisions of Act No. 224 of 1918, which is an act relating to contracts for public works. It provides that, when public works are to be constructed, at a cost exceeding $500, the contract shall be reduced to writing, signed by the parties, and that the state or any subdivision thereof letting a contract for such work shall require of the contractor a bond with surety, the condition of which shall be the faithful performance of the contract, and with an additional obligation "for the payment by the contractor and by all subcontractors for all work done, labor performed, or material furnished in the construction, * * * of such * * * work or improvement." Section 1.

The bond in the instant case was written in precise accord with the act. Therefore the only obligation assumed by the surety was to see that the contractor faithfully performed the contract and that payment was made for all work done, labor performed, or material furnished in the construction of the work.

Nothing is said in the act about the claims of those who advance money to the contractor with which to pay the laborers or for materials used in the construction of the work. So that one who advances money to a contractor with which to pay for materials has no action against the surety on the contractor's bond, unless the expression "materials furnished" be construed to include "money advanced."

The expression "material furnished" does not include money advanced. It was so held in Hanson v. Liberty Const. Co., 172 La. 298, 134 So. 98. To the same effect are the cases of Young v. Barelli, 169 La. 319, 125 So. 258, and Central Lumber Co. v. Schroeder, 164 La. 759, 114 So. 644, where the same expression in similar statutes was construed.

This case therefore hinges upon the question whether plaintiff furnished material for the construction of the work or whether he furnished the contractor money with which to buy them.

■ 2. We find the facts to be that plaintiff was not a furnisher of materials. On the contrary, he advanced to the contractor the sum of $3,000 which he used to pay for the lumber used in the construction of the bridges.

Before the completion of this contract, the contractor became embarrassed financially and called upon plaintiff for help. Plaintiff agreed to advance the necessary funds with which to purchase what lumber was necessary, provided he could be protected, and provided further that he was paid a commission or bonus of 10 per cent. on the amount of the invoices for the lumber purchased. He alleged that the scheme was that he should purchase the lumber from the mills and resell it to the contractor and thereby become a "furnisher of materials" for the work. But, instead of the lumber being purchased by plaintiff and resold to the contrac-

tor, it was purchased by the contractor and paid for by him with funds advanced by plaintiff.

The record shows that there were four purchases of lumber made. One from Peavey-Wilson on May 27, 1926, amounting to $774.-69; one from the R. W. Wier Lumber Company on July 15, 1925, amounting to $1,066.-68; and two from Lutcher & Moore, one on August 6th, amounting to $464.98, and one on August 21st, amounting to $242.57.

Mr. E. W. Thompson, assistant sales manager for the Peavey-Wilson Lumber Company, testified that he handled the order from his concern, and that the lumber was billed to W. H. Smith, Jr., the contractor, shipped with sight draft and bill of lading attached, which draft was paid through the bank of Orange, Tex. He further testified that his company had no dealings whatever with J. B. Smith, the plaintiff.

On September 3, 1926, more than three months after this lumber was shipped, W. H. Smith, Jr., wrote Peavey-Wilson concerning this order saying: "Will you kindly re-bill or make duplicate order to read, Sold to J. B. Smith, 3314 Tulane Avenue, New Orleans, Louisiana, notify W. H. Smith, Jr., Orange, Texas. Kindly mail this bill to J. B. Smith, Box 518, Alexandria, La."

A subsequent or "corrected bill" was made out and mailed as requested, and this was offered in evidence by plaintiff and is relied upon by him. Mr. Thompson said this "corrected bill" did not reflect the true status of the account, but was made at the request of W. H. Smith, Jr., the contractor.

Mr. T. P. Wier, secretary-treasurer of the R. W. Wier Lumber Company, testified that on or about July 7, 1926, W. H. Smith, Jr., placed an order with his company for lumber which was shipped and paid for by said Smith, and that his company had no dealings whatever with J. B. Smith, the plaintiff.

On September 3, 1926, two months later, W. H. Smith, Jr., wrote this company, saying:

"On July 15th, W. H. Smith, Jr., bought a car of lumber, Invoice No. 7003, car No. 20376, St. L. B. & M. box from your plant at Wiergate, Texas. There was an error made in billing this lumber and I ask that you kindly change the invoice and have the same read, Sold to J. B. Smith, 3314 Tulane Avenue, New Orleans, La., notify Texas Creasoting Company and W. H. Smith, Jr., Orange, Texas.

"If you will kindly make this correction and send me a new bill, I will certainly appreciate it very much, same to read as stated above. Kindly mail this bill to J. B. Smith, Box 518, Alexandria, La."

In answer to this letter, the company wrote W. H. Smith on September 7th, saying:

"We are complying with your request in so far as the invoice is concerned but of course can not change the railroad billing due to the car having already been shipped and delivered."

In connection with this order, we find in the record copy of a letter written by the R. W. Wier Lumber Company to W. H. Smith, Jr., dated July 10th, in which the company stated that, inasmuch as this was the first order received from him, he would be required to deposit $500 in the Orange National Bank to the credit of the company before the shipment was made. The deposit was

made as suggested and the lumber shipped. On July 17th the company made sight draft on W. H. Smith, Jr., for the amount of the bill through the Orange National Bank, which draft was paid.

Plaintiff offered in evidence bills showing that the lumber was sold to J. B. Smith, but these were "corrected bills" made at the request of W. H. Smith, Jr., in his letter of September 3d, long after the lumber was shipped.

The two orders from the Lutcher Moore Lumber Company were placed by the contractor's engineer, and first billed to W. H. Smith, Jr., who testified that, after he got the original bill of lading, he wrote to the company asking that the lumber be billed to J. B. Smith.

It thus appears that all this lumber was ordered by W. H. Smith, Jr., originally billed to him and paid for by him.

3. As to the money advanced by plaintiff, the record shows that W. H. Smith, Jr., drew two sight drafts on his brother J. B. Smith, each for $1,500. These drafts were drawn through the Orange National Bank and the proceeds credited to the account of W. H. Smith, Jr., who drew his checks and drafts on that bank in payment of the bills for the lumber. The bank officials testified that they had no dealings whatever with the plaintiff further than to handle the drafts which his brother drew on him. Counsel for plaintiff in their brief say:

"The evidence further shows that W. H. Smith, Jr., opened his account with the Orange National Bank by drawing two drafts on his brother James B. Smith for $3,000.00."

In explanation of the negotiations which took place between him and his brother, plaintiff testified:

"I told him, well, I would let him have this money provided this stuff was billed to me and that he would pay me ten per cent on it to the amount of the invoice."

W. H. Smith, Jr., testified:

"I called him (J. B. Smith) and asked him if he would buy this lumber for me and I would give him ten per cent on top of the invoices, and he told me he would."

Counsel for plaintiff cite, in support of their contention that the surety on the contractor's bond is liable, the case of State v. Smith et al., 167 La. 301, 119 So. 56.

That case is not in point here. There the contractor was without funds with which to pay his labor. The necessary amounts were obtained from the claimants who appointed the contractor their agent to obtain from the laborers assignments and subrogations of their claims, and "contemporaneously with the payment of the money to the laborers, Smith obtained from them by private act, the assignment and subrogation relied upon."

The money was there paid direct to the laborers by the contractor who was acting as agent for those who advanced it, and the claims were assigned, and subrogations were taken "contemporaneously with the payments," and were express. The receipts and acts of subrogation recited that the money was paid to the laborers by those who advanced it, and it was held that the subrogations were valid under article 2160, par. 1, of the Civil Code.

The claimants in that case were allowed to recover against the surety on the contrac-

tor's bond as subrogees of the laborers; the theory being that they were entitled to the same privileges as the laborers would have had if they had asserted their claims personally.

In the case at bar, plaintiff did not, either personally or through the contractor as his agent, pay the claims of the materialmen and take conventional subrogations from them, as did the claimants in the cited case. On the contrary, the contractor drew drafts upon him which were paid and the proceeds credited to the contractor's account, and the contractor in turn drew his own checks and drafts in favor of the materialmen in payment of their claims, without obtaining from them subrogations in favor of plaintiff.

Under such circumstances, plaintiff has no claim against the contractor's surety.

There was judgment against the contractor and the surety in solido. The surety alone appealed.

For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that plaintiff's demand against the Ætna Casualty & Surety Company, surety on the bond of W. H. Smith, Jr., contractor, be rejected, and his suit against it dismissed at his costs in both courts.