## M. Talley et al. *v.* Alexander, Administratrix, et al.

The lessee cannot make repairs at the lessor's expense, unless he complies with the Art. 2664 of the Civil Code, and puts the landlord in default.

The lessee can convey no greater rights to the under tenant, than he himself possesses.

C. C. 2668, 2664, 2697.

APPEAL from the District Court of Caddo, *Spofford,* J.

*Land & Cook,* and *R. G. Harper,* for plaintiffs and appellants. *Young,* curator *ad hoc,* for defendants.

Buchanan, J. The plaintiffs are appellants from a judgment rendered against them by the court below, in favor of the defendants.

We have carefully examined this case, assisted by an elaborate opinion of the Judge *a quo,* in which we fully concur for the reasons assigned by him, which we adopt as our opinion.

It is therefore ordered and decreed, that the judgment of the District Court be affirmed, with costs.

Opinion of Spofford, Judge of the District Court:

The plaintiffs allege that in June, 1848, *Samuel Bennett* and *M. D. C. Cane,* herein represented by *M. D. C. Alexander,* as executrix and administratrix, leased to *Durham & Harris,* certain warehouses in Shreveport, described in the lease as " our warehouses, together with lots 11 and 12, in block 60, on which the buildings stand," for the term of three years, at the rate of $600 per annum; that afterwards, on the 11th of November, 1848, the said lessees,

*Durham & Harris,* underlet to the petitioners a portion of said buildings and lots, described as follows, to wit: " The cotton shed situate on Commerce street, in front of the large warehouse now in the occupation of *Durham & Harris,* 70 feet front, &c., by 70 feet, &c.," for the term of three years, at the rent of $300 per annum.

They aver that the said cotton shed was an open shed, and that they converted the same into storehouses, by weatherboarding, flooring, partitioning, and ceiling the same, and making doors and skylights, and building chimneys, all which improvements cost them $1200, and enhanced the value of the premises to that amount ; that in June of the next year, *Durham & Harris* failed, and shortly afterwards, the plaintiffs were called upon by *Bennett,* to deliver possession of the said leased premises to him, on the ground that *Durham & Harris* had neglected to pay their rent and left the country, whereupon, the petitioners gave up the premises to the owners, who have since been in the enjoyment thereof, including the improvements, wherefore they have become liable to pay them $1200 for the improvements so retained, with five per cent. interest from August, 1849.

The defendants pleaded a general denial ; and a joint note of $300, signed by *Tally & Miller,* to the order of *Durham & Harris,* and by them endorsed, is pleaded in reconvention.

Why the plaintiffs delivered possession without making this claim, and have slept over it for nearly five years, till the original lessor is dead, is not explained.

They urge in argument, that they occupy the position of third persons, who have made constructions and works upon the owner's soil, and that he having kept the same, is obliged by Article 500 of the Civil Code, to reimburse them for the value of their materials and the price of the workmanship, and they have cited the case of *Miller* v. *McCloude,* 11 Rob. 225, in support of this position.

That case does not go to the extent of saying that the doctrine contained in Article 500, applies without modifications to improvements made by a lessee, for if it did, it would not be sound in law. The argument is merely, that supposing such to be the case, the position of the appellant with regard to his mortgage rights, could not be maintained.

The rights of lessees, touching their improvements, are regulated in another portion of the Code.

Art. 2663 : " The lessee is bound to deliver the thing in good condition and free from any repairs. He ought to make during the continuance of the lease, all the repairs which may accidentally become necessary, except those which the tenant is bound to make as hereafter directed."

Art. 2664 : " If the lessor do not make the necessary repairs in the manner required in the preceding article, the lessee may call on him to do it. If he refuse or neglect to make them, the lessee himself may cause them to be made, and deduct their price from the rent due, on proving that the repairs were indispensable, and that the price which he has paid was just and reasonable."

Art. 2697 : " The lessee has a right to remove the improvements and additions which he has made to the thing let, provided he leave it in the state in which he found it. But if these additions be made with lime and cement, the lessor may retain them on paying a fair price."

Now, in the present case, a cotton shed was converted by the under tenants into two store rooms. It is not pretended that this comes under the head of indispensable repairs. Nor is it pretended that any demand was ever made of the lessors to have the job done themselves, or that they were even consulted about it. It is not shown that the plaintiffs ever sought to remove the repairs, or were prohibited from doing so. For aught that appears to the contrary, the cotton shed itself might have been as useful to the owners for their purposes, as the weatherboarded rooms into which it was converted without their license or privity.

The lessee cannot make repairs at the lessor's expense, unless he complies with the Article 2664, and puts the landlord in default. *Hennen* v. *Hayden & Kelly,* 5 An. 713.

It was well said by the Supreme Court, in *Shull* v. *Banks,* 8 Rob. 171, that "the owners of houses would soon be ruined, if it were permitted to every tenant to make such repairs as his fancy or caprice might dictate, without notifying the owner of the property of their intention."

So much for the case, as it stands upon the face of plaintiffs' petition.

But upon the trial, the plaintiffs themselves have adduced evidence, which completely bars their claim to relief.

The first evidence they offered, was the original lease from *Bennett & Cane* to *Durham & Harris*, which contains this remarkable clause : " And whatever improvements they (i. e. the lessees) may choose to make, they have the privilege of doing, by leaving the same upon the premises, free of charge." " *Conventio vincit legem.*" The contract is the law of the parties, if not contrary to law itself. But such a contract as this, has been recognized as legal and binding in the very case on which the plaintiffs rely. *Miller* v. *McCloud*, 11 R. 225, already cited.

The only question then that remains, is, are the sub-lessees controlled by this contract between the original parties.

They seem to have considered themselves as so bound, for, although they had a lease for three years from *Durham & Harris*, they gave up possession at the end of one year without a murmur, when the defendants demanded possession on the ground that *Durham & Harris* had forfeited their lease by failure to pay the rent. It is equitable, that they should be so bound, because they were notified of the contents of the original lease when they hired a portion of the premises from *Durham & Harris*, as appears by the reference to that document in their own written lease, which they have produced in evidence.

And finally, it is legal, that they should be so bound, because the lessee, although not interdicted from sub-letting the premises, can convey no greater rights to the under-tenant than he himself possesses. It makes no difference in this matter whether the original lease was recorded or not.

The only statute upon the registry of leases to which I have been referred, was intended solely for the protection of lessees against being evicted on a sale of the premises by the owner.

The Act of March 26th, 1806, merely provides, " that no lease of any lands, houses or tenements, of any description, shall be avoided by sale of such lands, houses or tenements, so leased or otherwise, but shall remain in full force for and during the time specified in such lease : provided, however, that every such lease shall be in writing, signed by the proprietor, &c., and acknowledged and recorded in the same manner as is or may be provided by law for absolute deeds of sale of real estate." Bul. & Cur. Dig. 539.

Under the evidence before me, I should feel justified in giving judgment in favor of the defendants on the note pleaded in reconvention, if I could see any necessary connection between the main action and that demand ; as it is, there must be judgment of non-suit upon that claim.

It is, for the foregoing reasons, ordered and decreed, that there be judgment against the plaintiffs in favor of the defendants, in the main action. It is further ordered, that there be judgment as in case of non-suit, on the demand in reconvention, and that the plaintiffs pay the costs of this suit to be taxed.