**SHREVEPORT LONG LEAF LUMBER CO., Inc., v. PARKER et al.**

**No. 4140.**

Court of Appeal of Louisiana, Second Circuit.

Nov. 10, 1932.

154

W. M. Pollock and L. E. Colvin, both of Mansfield, for appellant.

W. Crosby Pegues, of Mansfield, for appellee.

PALMER, J.

Plaintiff is suing to recover of defendant R. E. Parker the sum of $734.51 with legal interest thereon from February 12, 1930, and in connection therewith, seeks judgment against him, and also against the other defendant W. M. Pollock for the recognition and enforcement of an alleged lien and privilege as furnisher of material and supplies, against the improvements erected by Parker upon the premises of Pollock, as well as the land on which said buildings and improvements were erected, as shown in the lease from Pollock to Parker.

Statement of Case.

On March 30, 1929, defendant W. M. Pollock entered into a contract of lease with defendant R. E. Parker for a term of ten years at a monthly rental of $10, covering a tract of land containing about twelve acres, situated near the town of Mansfield in De Soto parish. On this land there was situated a residence and some outhouses. The lease specifies that, in consideration of a reduced monthly rental, the lessee obligates himself to enlarge the dwelling house then situated upon the premises, build a garage, two chicken houses, and do certain fencing, and to paint or stain the houses and wire them for electricity and pipe them for gas, all at his expense. These improvements were to be made within two years from June 1, 1929. In addition to these improvements, the lessee further obligated himself, at his expense, and at his convenience, to build upon these premises laying houses, hatchery houses, brooder houses, feed houses, and a workhouse. Attached to the lease contract is a schedule of the cost and an itemized list of material that the lessee obligated himself to expend and use in the work before mentioned. The lease further provides that such improvements should become the property of the lessor at the expiration of the lease. The lease contract was duly filed and recorded in the office of the clerk of court in and for De Soto parish. Lessee made the improvements upon the dwelling house as specified in the lease contract, and, while living in the residence, in December, 1929, the dwelling was destroyed by fire. In some way Parker carried insurance on the dwelling in his name in the sum of $1,400 and collected the full amount of it after the fire.

Following the fire Parker erected a new dwelling upon the same premises, and bought certain of the material used therein from plaintiff. It is for the purchase price of this material that plaintiff is seeking in this suit to recover judgment and to have his lien as a furnisher of material and supplies recognized against the building and the premises on which the building is situated.

After the fire, although he appears to have taken no steps to have the dwelling insured in his name, or to have the insurance policy obtained by Parker assigned to him, Pollock did urge Parker to employ this fund in building a new dwelling in place of the one destroyed by fire. A short time after Parker had completed the new dwelling, he abandoned the premises and departed from the state.

On April 10, 1930, plaintiff filed its lien as a furnisher of material and supplies used in the erection of this dwelling, which was duly recorded in the proper records of De Soto parish. On the 18th of August, 1930, plaintiff instituted this suit. Pollock instituted suit against Parker for six months' rent, or $60, and for cancellation of the lease. On the 9th of October, Pollock secured judgment against Parker for said amount, and for the dissolution of the lease and a recognition of his ownership of all the buildings and improvements on the premises, restoring to him the possession thereof, free and clear of all liens and incumbrances. Plaintiff was not a party to that suit.

In plaintiff's petition, therefore, it seeks to recover judgment against Parker in the amount of its said bill, viz.: $734.51, with interest, and also a further judgment against both Parker and Pollock recognizing and enforcing plaintiff's lien and privilege as furnisher of material and supplies against the property described in the lease from Pollock to Parker, and including the building in which the alleged material was used.

Pollock answered plaintiff's demands with a general denial, except he admitted the lease from himself to Parker and the ownership of the property embraced therein. Pollock then sets up the defense that Parker, after having breached his obligations to pay the rents as they matured, and to make further additional permanent improvements, abandoned his lease and premises, leaving for parts unknown, and that he, Pollock, thereupon, in a proper legal proceeding, secured a dissolution and termination of the lease and also a further judgment recognizing him as the owner of all buildings and improvements located upon the premises described in the lease.

Pollock further alleges that at the time of the execution of the lease, he had a dwelling house, garage, and other improvements upon said premises, of the value of about $800, which dwelling was remodeled by Parker, after which he moved into it, and that later the dwelling and improvements were destroyed by fire, and that Parker collected $1,400 insurance carried on the said building; that Parker promised and agreed with him to build upon said premises a new dwelling house with the said insurance money; and that, after collecting the same, he built a dwelling house, now situated upon said premises, thereby replacing the one that had been destroyed by fire.

He further alleges that under the lease contract, at the termination thereof, all the improvements placed thereon by Parker would become his property without compensation to Parker, since the said improvements were to be a part of the rental Parker was to pay for the possession and use of said property.

Parker, appearing through a curator ad hoc, answered, entering a general denial.

Upon these issues the case went to trial, resulting in a judgment in favor of plaintiff and against R. E. Parker for the amount sued for, viz.: $734.51, together with legal interest at the rate of 5 per cent. per annum from February 12, 1930, until paid, with all costs of the suit; and further decreeing that plaintiff have judgment against R. E. Parker and W. M. Pollock, recognizing and enforcing plaintiff's lien and privilege as a furnisher of materials and supplies, as shown on plaintiff's recorded claim, to the full extent of plaintiff's claim against the dwelling house constructed by Parker and situated upon the premises embraced in the lease; and ordering the said building sold and plaintiff paid by preference and priority over all other persons out of the proceeds thereof. The judgment further decrees that plaintiff's demands for a lien and privilege against the land of W. M. Pollock embraced in the lease on which the said building is erected, be rejected. From that judgment defendant W. M. Pollock has appealed, and plaintiff has answered the appeal, asking for an amendment of the judgment so as to extend its lien and privilege to cover the realty described in the lease, or in the alternative, to cover at least one acre upon which is situated the dwelling in question.

### Opinion.

W. M. Pollock filed an exception of no cause of action, which was overruled by the district court. He appears to have abandoned the exception on appeal, since no argument, orally or by brief, is made in support of it.

The position of plaintiff is: (1) That under the lease from Pollock to Parker, Parker was absolutely bound as a part of the consideration of the lease, to erect buildings for the improvement of the lease premises, and that Pollock was as much interested in the building of the dwelling house in question as Parker and made demands on Parker for its erection, and that therefore Parker, in the erection of the dwelling place of the one burned, was nothing less than Pollock's agent, and therefore Pollock is bound as much for the material used in that building as if he had made a direct contract with plaintiff for such material, and that its lien and privilege extends to the land as well as the building, and (2) that even treating the contract as an ordinary lease, plaintiff would still have a lien and privilege on the buildings erected on the lease premises as well as against the lease itself, for the payment of the purchase price of the materials used in said building.

Defendant Pollock contends that this case is governed exclusively by the terms of section 11 of Act No. 298 of 1926, which reads as follows: "Where any work as hereinabove set forth, is done or buildings or other improvements made, where the person for whom the work is done or with whom the contract is made, or by whom the work is done, is not the owner of the land upon which the work is located, then he shall be subject to all the obligations that are made incumbent on the owner by this act, and the liens and privileges created and established by this act shall operate upon whatever right said person having the work done or doing the work may have to the use of the land as lessee; and said lien and privilege shall operate against the lease such person holds, if there is one, or if said work is caused to be erected by a mineral lessee, then the privilege shall exist against the mineral lease and whatever rights

the lessee may have therein, thereon or thereto; provided, however, that the privileges hereby created shall not interfere with the lessor's lien and privilege or his right to demand and recover occupancy of the leased premises in default of the payment of rent, or his right to sell the lease or right of occupancy under any judgment he may obtain against his lessee growing out of the lease; and in the case of such sale, the privileges herein created shall be restricted to the proceeds of sale, and shall not follow the property, the lease or the right of occupancy."

Defendant Pollock further argues that Act No. 298 of 1926 supersedes all previous laws, including the provisions of the Civil Code, dealing with liens and privileges growing out of the construction of improvements on immovable property. He therefore contends that, when this statute is applied, the rights of plaintiff must be restricted solely to the original rights Parker had under the lease with Pollock, and that this law, properly interpreted, means that, at the termination of the lease, Parker's rights to the land, as well as any rights and interest in and to the dwelling in question, would end, and that at the same time plaintiff's rights, being circumscribed by the limits of Parker's rights, in so far as the land and improvements are concerned, would also end; that since said lease has been terminated by judgment of the court, ending all of Parker's rights and interests in and to the said premises, as well as to the said dwelling, that plaintiff's rights therein have likewise terminated.

■ We think this case is to be settled upon a simple interpretation of law governing the facts, about which there is but little, if any, dispute. We disagree with plaintiff that the mere fact that Pollock repeatedly urged Parker to use the money he collected as insurance money on the dwelling destroyed by fire made Parker Pollock's agent in the erection of the new building. In our view, under the contract between Pollock and Parker, they were clearly lessor and lessee, and their relationship at no time changed. Under the contract of lease Parker obligated himself to make certain repairs on the dwelling then upon the premises, but he did not bind himself to build a new residence if the old one should be destroyed by fire. The fact that Pollock was interested in inducing Parker to use the insurance money to build another dwelling, a situation not covered at all in the contract, did not change, in any manner, the fact that Pollock continued lessor and Parker lessee under the written agreement. It is our view of the situation, therefore, that plaintiff's rights in the premises are to be interpreted according to the meaning of section 11 of Act No. 298 of 1926, and such other laws as bear upon the question.

To ascertain the rights of plaintiff, it is necessary to determine what were the rights of Parker. Since he occupied these premises as lessee, we must look to the laws governing the rights of lessee for settlement of that question. Briefly the situation may be stated thus: If Parker, as lessee, was the owner of the building in question and was under no contractual obligation to Pollock for the dwelling to become Pollock's property at the termination of the lease, then Parker would be the owner of the dwelling at the termination of the lease.

■ Of course, if Parker agreed, as contended by Pollock, that at the termination of the lease all improvements he placed upon these premises would become the property of Pollock, then that agreement would settle the controversy. But Pollock is incorrect in making that contention. True enough, the contract of lease does specify that the particular improvements which Parker obligated himself to place upon these premises, in view of the reduced rental which Pollock agreed to take, would, at the termination of the lease, become the property of Pollock, but that stipulation covers only such improvements as Parker obligated himself to make under the terms of the lease contract. As stated before, the building erected by Parker after the Pollock dwelling had burned, was not done by Parker in pursuance to any obligation he had assumed under the lease contract. Parker, in the erection of that building, did it under his rights as lessee, and under which he was the owner of that building with the right to remove the same at his expense at the termination of the lease. The mere burning of Pollock's dwelling, which was upon these leased premises when Parker took possession of them, without fault on Parker's part, did not obligate Parker to replace the dwelling. In the case of Schwartz v. Saiter, 40 La. Ann. 271, 4 So. 77, 80, in considering a case in which a dwelling burned while occupied by the lessee and a new one erected by him, and, in further considering the obligations of the lessee in connection therewith, as well as the rights of the furnisher of materials used therein, in construing article 3249 of the Civil Code, governing liens of furnishers of material, which is very similar to section 11 of Act No. 298 of 1926, the Supreme Court said:

"But the 3249th article of the Revised Civil Code contains a provision not found in the corresponding article of the Code of 1825. It is in these words, viz.:

"'The above-named parties, i. e., architects, contractors, etc., shall have a lien and privilege upon the building, improvement, or other work erected, etc., * * * and if such building, improvement, or other work is caused to be erected by a lessee of the lot of ground, in that case the privilege shall exist only against the lease, and shall not affect the owner.'

"We are not aware of any decision of this court that has ever given an interpretation of this article, but it is reasonable to infer from the provisions quoted that the lease contemplated is one of property that is unimproved; that the owner thereof shall not be affected by any construction subsequently erected thereon by the lessee, and which was not originally part of the 'property under lease;' and that the contractor who erected it has a privilege thereon as an integral part of the 'lease.'

"Antecedent to the revision of the Code in 1870, the contractor had no such privilege. It is not awarded against the lease, but against the lessee. The quoted paragraph declares that it shall not affect the owner.

"The employment of these terms clearly indicates the purpose and object to be that the construction forms a part of the lease, and that the privilege of the contractor attaches to it. In this manner it could be made effective. But should it be held that such a construction or work became the property of the lessor of the lot of ground, free of the contractor's lien, it would be deprived of all force and efficacy, as nothing applicable to it would remain.

"There is a provision in the contract of lease to the effect that at the termination of the lease all the repairs and improvements made by the lessee shall become the property of the lessor; but that 'the buildings and constructions put upon the property shall belong to the lessee,' etc.

"It is therefore obvious that if the constructions under consideration had been intended or designed to replace those lost and destroyed by fire, the lessee would have a seizable interest in them; hence we must conclude that inasmuch as the loss by fire was not occasioned by Saiter's fault or neglect, and as he was not bound to make their replacement, Schwartz's seizure was justified, and must be maintained to that extent.

"Schwartz's judgment covers all the property that is mentioned in the itemized account, as having been either constructed or repaired; but we are of the opinion that it should be restricted to the constructions that were made in replacement of those which were destroyed by fire."

Schwartz was suing Saiter as lessee for enforcement of his lien as furnisher of material used by Saiter in the erection of a building on the leased premises.

Of course, the lessee, at the termination of the lease, has no further claims upon the ground on which the improvements are erected, that is, he cannot force the lessor to let his building remain upon the lessor's land and retain his ownership of it. The lessee must demolish such buildings at his expense or abandon them to the lessor. It is contended by plaintiff that, under defendant's theory, this case would be governed by Civ. Code, art. 508, under the terms of which Pollock would have the right to keep the improvements by paying for them, and that, acting upon his rights under that article, he elected to keep the dwelling in question and hence is bound to Parker, therefor, and, if bound to Parker, then to his creditors who furnished the materials used in the erection of the dwelling, to pay for such materials and supplies. That article provides: "When plantations, constructions and works have been made by a third person, and with such person's own materials, the owner of the soil has a right to keep them or to compel this person to take away or demolish the same."

In our view, the provisions of this article do not apply without modification in this case, since the dwelling in question was placed upon the premises by a lessee. We are here dealing with the respective rights of a lessor and a lessee which, in matters such as we are now considering, are primarily governed by article 2726 of the Civil Code. That article provides:

"The lessee has a right to remove the improvements and additions which he has made to the thing let, provided he leaves it in the state in which he received it.

"But if these additions be made with lime and cement, the lessor may retain them, on paying a fair price."

See, also, Talley v. Alexander, 10 La. Ann. 627.

Since, under the terms of the lease contract between Pollock and Parker, only such improvements were to become Pollock's at the termination of the lease as Parker obligated himself to make upon the leased premises, and since Parker was under no obligation to replace the Pollock building that burned, as there is not the slightest intimation that the fire was caused by the fault of Parker, then the dwelling in question falls under that category of improvements made by a lessee who has the right to remove them at the termination of the lease.

In this case we must consider the rights of plaintiff independently of the judgment rendered in Pollock's favor and against Parker, terminating the lease and decreeing Pollock the owner of the dwelling in question. For the purpose of the case, we shall treat the rights of Pollock and Parker as they existed prior to that judgment.

Under such circumstances, Parker unquestionably had the right to remove the dwelling in question. It is also equally certain that Pollock is not bound to keep the dwelling and pay for it.

In passing on this identical question, our Supreme Court, in the case of Pecoul v. Auge, 18 La. Ann. 615, said:

"By article 2697 C. C. [now article 2726],

the lessee has the absolute right to remove improvements and additions made by him on the thing let, provided he leaves it in the state in which he received it.

"He is not obliged to take for them an equivalent in money; nor is the lessor bound to keep and pay for them. He may do this, when the additions have been made with lime and cement."

Counsel for defendant Pollock contends that, in the case of Jackson Homestead Ass'n v. Zimmer, 16 La. App. 647, 134 So. 126, the Orleans Court of Appeal has interpreted section 11 of Act No. 298 of 1926 favorable to their position in this case, which is, that the rights of plaintiff in this case are limited to the rights of Parker, and that, under this provision of the law, Parker lost all his rights to the dwelling when Pollock, by a judgment of the court, secured a dissolution of the lease contract. In that case the court said: "All that was intended by Act No. 298 of 1926, § 11, was to give the furnisher of materials the right to a lien effective only to the extent of the right of the tenant or lessee of the property, where person for whom work is done or with whom contract is made is not owner of land."

We are quite ready to accept and adopt these conclusions as our own. We have already said that the rights of plaintiff in this case were limited to the original rights Parker had, and since we have already concluded that Parker was the owner of the building at the termination of the lease, and had the right to remove it, then likewise plaintiff has the right to enforce its lien against this building as furnisher of materials and supplies used in its construction.

No citation of authorities is necessary to sustain the claim that a furnisher of material and supplies may enforce his lien which has been properly preserved against whatever rights a lessee may have in leased premises and against the buildings which the lessee has constructed thereon, and in which buildings such materials and supplies have been used in its erection. There are many such authorities, but the provisions of section 11 of Act No. 298 of 1926, creating such a lien and privilege, are too clear and plain to admit of any controversy.

It is our view that the judgment of the lower court is correct, and it is accordingly affirmed, appellant to pay all costs of appeal.

McGREGOR, J. (dissenting).

On March 30, 1929, W. M. Pollock, one of the defendants herein, leased by written contract to R. E. Parker, the other defendant, the following described premises in De Soto parish: "A certain tract of land described as beginning 21.24 chains North of the Southeast corner of the Southeast Quarter (SE ¼) of Section Eighteen (18) Township Twelve

(12) North Range Thirteen (13) West, and run North 18.76 chains, thence West 18.84 chains, thence South 18.76 chains, thence East 18.84 chains, to the point of beginning, containing 35.34 acres more or less, less that portion sold by J. C. Allen to M. K. Hirschman, as recorded in Book 20 of Conveyances, page 176, of the Records of DeSoto Parish, Louisiana, and described as beginning at the Northeast corner of the South East Quarter (SE ¼) of the South East Quarter (SE ¼) of Section 18, Twp. 12, N. Range 13 West, and run North 480 feet, West between parallel lines to make six acres. Also less a tract of land described as beginning at the South west corner of the above described lot sold to Hirschman and run West 260 yards to land formerly owned by Wm. Stiles, thence North 210 yards, thence East 140 yards, thence South to Mansfield and Logansport Road, thence in a Northeasterly direction with said road about 130 yards to point directly North of point of beginning, containing 10 acres, more or less, and being part of the Northeast Quarter (NE ¼) of the South East quarter (SE¼) of Section 18, Twp. 12, N. Range 13 West, leaving in the tract herein above 18.84 acres more or less, with all buildings and improvements thereon, and containing about twelve (12) acres, more or less, North of the aforesaid gravel road."

The property that was leased consisted of about twelve acres of land, more or less, with the residence and some outhouses. The term of the lease was to be ten years, and the rental price was $10 per month, payable on the first day of each and every month.

The property had previously rented for $20 per month, and, in the lease referred to above, it was stipulated and agreed that, in consideration of the fact that the monthly rental was reduced to $10 per month, the lessee obligated himself to enlarge the dwelling house on the property so as to make it a six-room house and to build on the premises a garage, two chicken houses, and a poultry wire fence around the entire property. The houses were to be painted and the dwelling house was to be wired for electricity and piped for gas. All these improvements were to be made within a period of two years from June 1, 1929. Nothing is said as to the ownership of these improvements and structures, but, in the absence of any stipulation to the contrary, we are bound to presume that they were being made for the benefit of the owner of the property and belonged to him at the time they were made. This presumption is strengthened by the fact that in another paragraph of the contract it was specially "stipulated and agreed" that: "In addition to the aforesaid enlargement and improvements to the aforesaid described premises, the said lessee agrees to, at his own cost and expense, build at his convenience, before or

after the first two years, laying houses, hatchery houses, brooder houses, feed houses and work house upon the above described property, which improvements are to revert to and become the property of the lessor at the expiration of this ten-year lease, less ordinary wear and tear excepted."

If the improvements made on the dwelling and the garage and fencing were not to be the property of the lessor from the beginning, it would have been specially stipulated as was done with reference to the buildings enumerated in the paragraph above quoted from the contract.

Attached and annexed to the lease contract was a schedule of the cost and itemized list of materials that the lessee agreed to use in improving the property, and also plans of the houses and improvements he was to place upon the property, in accordance with the agreement contained in the above-quoted paragraph.

This lease contract was recorded in its entirety in the records of the clerk's office in the parish of De Soto.

The improvements upon the dwelling were made in accordance with the terms of the contract and the lessee continued to live in it until some time in December, 1929, when it was destroyed by fire. The lessee had the dwelling insured in his name for $1,400, and collected this sum of money. The lessor at once demanded of the lessee that the dwelling be rebuilt, and as he says in his testimony, he "hopped on him about it." The work of rebuilding the dwelling must have been begun by the lessee very soon after the fire for the reason that the bill for the materials bought for this purpose shows that it was bought and delivered between the dates of January 4, 1930, and February 11, 1930, inclusive.

The Shreveport Long Leaf Lumber Company, Incorporated, plaintiff herein, through its branch office in Mansfield, furnished a large part, if not all, of the material that went into the new dwelling, the same having been sold to R. E. Parker, the lessee and one of the defendants herein. The charge for this material was $729.51, no part of which was ever paid. Within sixty days after the delivery of the last item charged on the bill, the furnisher of the material recorded a sworn itemized statement of its account and asserted its lien upon the property as provided by law. Copies of the account and annexed affidavit were sent by registered mail to R. E. Parker as contractor and W. M. Pollock as owner, which copies were duly received and acknowledged by signing the receipts for the registered mail.

Parker, the lessee, apparently took no steps to pay the bill and soon abandoned the premises and departed from the state. Pollock, the lessor, brought suit against Parker, the lessee, for six months' rent, or $60, and on October 9, 1930, secured judgment for that amount. The judgment further decreed the dissolution of the lease contract and recognized Pollock, the lessor, as the owner of all the buildings and improvements on the premises and restored the possession and occupancy of the same to him "free and clear of all liens and incumbrances."

On August 18, 1930, the plaintiff herein, the Shreveport Long Leaf Lumber Company, Incorporated, filed suit against R. E. Parker as contractor and W. M. Pollock as owner for the amount of its bill for the material furnished by it and which it alleged was used in the construction of the dwelling which was built by Parker on Pollock's property. In its petition it was alleged that Parker had left the state and was therefore a nonresident and that it was necessary to appoint a curator ad hoc to represent him. Accordingly a curator ad hoc was appointed and service was made on him, as well as on Pollock, the other defendant.

In its petition the plaintiff prayed for judgment against R. E. Parker and W. M. Pollock, the defendants, for $729.51 plus $5, the cost of recording the lien, and for the recognition and enforcement of its lien and privilege as furnisher of materials upon the dwelling and the premises upon which it was located.

Upon trial there was judgment in the lower court in favor of the plaintiff for $734.51, and interest, recognizing and enforcing its lien and privilege as furnisher of materials against the dwelling house erected, but rejected its lien and privilege upon the land itself. From that judgment the defendant Pollock has appealed and the plaintiff has answered the appeal and has asked that the judgment be amended so as to recognize and enforce its lien upon the land upon which the dwelling is erected, or, in the alternative, that it be recognized and enforced at least upon the one acre of the premises upon which the said dwelling is erected.

Parker was not present during the trial and has taken no appeal. Since he is a nonresident and no property of his has been attached, he has practically passed out of the picture and the case is between the plaintiff and the defendant Pollock alone.

The defendant Pollock filed an exception of no cause or right of action, which was overruled by the trial judge. The exception is not contended for in this court and we therefore dismiss it from further consideration.

Counsel for both appellant and appellee appear to agree in their argument that the only question to be determined in this case is as to whether the plaintiff's lien and privilege as recorded operate on the land of the defendant Pollock and the dwelling, for which

it is alleged plaintiff furnished materials which were used therein.

It must be borne in mind that the materials which plaintiff furnished and which we find were used upon the land of the defendant in the construction of the dwelling in question were not furnished to repair the dwelling already on the premises at the time of the execution of the lease contract, but they were furnished and used in the construction of a new house which was built by Parker to replace the old dwelling which had been repaired, enlarged, and painted in accordance with the terms of the said lease contract and which was destroyed by fire a few months after the beginning of the said lease.

I have searched the contract in vain for any provision for the replacement of any burned improvements on the premises. So this case has to be determined independent of the contract. Unquestionably the original dwelling on the premises, as repaired and enlarged by Parker, the lessee, was the property of the lessor, Pollock. There was no thought in anybody's mind about this dwelling, as repaired, reverting to the lessor at the expiration of the lease. It was already his. The reference to any improvements reverting to the lessor is in a separate paragraph and covers only laying, hatchery, brooder, feed and work houses to be constructed at the convenience of the lessee during any time of the term of the lease. So far as the evidence discloses, none of these improvements were ever constructed, nor are they involved in this suit.

It is the contention of the defendant Pollock that this case is governed exclusively by the terms of section 11 of Act No. 298 of 1926, which reads as follows: "Where any work as hereinabove set forth, is done or buildings or other improvements made, where the person for whom the work is done or with whom the contract is made, or by whom the work is done, is not the owner of the land upon which the work is located, *then he shall be subject to all the obligations that are made incumbent on the owner by this act, and the liens and privileges created and established by this act shall operate upon whatever right said person having the work done or doing the work may have to the use of the land as lessee; and said lien and privilege shall operate against the lease such person holds*, if there is one, or if said work is caused to be erected by a mineral lessee, then the privilege shall exist against the mineral lease and whatever rights the lessee may have therein, thereon or thereto; provided, however, that the privileges hereby created shall not interfere with the lessor's lien and privilege or his right to demand and recover occupancy of the leased premises in default of the payment of rent, or his right to sell the lease or right of occupancy under any judgment he may obtain against his lessee growing out of the lease; and in the case of such sale, the privileges herein created shall be restricted to the proceeds of sale, and shall not follow the property, the lease or the right of occupancy." (Italics ours.)

Basing his argument on the contention that plaintiff's rights, whatever they may be, are derived solely from this section, counsel for defendant Pollock states:

"It is evident that the lien created by this statute where improvements are constructed by a lessee on the property of the lessor, extends only to whatever right the lessee may have under the lease. This would include, of course, the right to seize and sell the lessee's contract, including all privileges flowing therefrom, but subject to all conditions thereof."

"We respectfully submit, therefore, that the only right which the plaintiff herein could claim would be to claim a lien and privilege against all the rights conferred upon R. E. Parker under the terms of the lease contract between him and W. M. Pollock, dated March 30, 1929; and subject of course to the right of Mr. Pollock to demand cancellation of the lease and to claim ownership of any improvements placed upon the property by the lessee."

By his argument counsel likens this case to one wherein a lessee, bound under the terms of his lease to make certain improvements which at the termination of the lease shall revert to the lessor, does so, and afterwards defaults in the monthly payments of rent and has his lease forfeited therefor by a judgment which recognizes the reversion of the improvements to the lessor. He contends that in such a case the lessor obtains a perfect right to these improvements, regardless of how much the lessee may owe on them to laborers and/or furnishers of material who may have complied with the strict letter of the law in causing their liens to be recorded. He claimed that in no case do the laborers and materialmen have any lien whatever on the improvements; that their liens and privileges are confined to the rights of occupancy and enjoyment conferred upon the lessee by the lease contract; and that even then the lien is subject to the right of the lessor to cancel the lease and nonpayment of rent.

So that it is the position of the appellant, as I see it, that the dwelling house involved herein is in the nature of improvements placed upon the property of another within the contemplation of section 11 of Act No. 298 of 1926; that the furnisher of materials never at any time had any rights or liens upon the said building; but that his sole and only lien was upon the lessee's right of occupancy, subject to the lessor's right to cancel the lease for nonpayment of rent, which right of occu-

>8

pancy in this case has actually been cancelled and forfeited by judgment of the court.

After this case was filed, while it was pending and before it was tried, the defendant W. M. Pollock, lessor, brought suit against the lessee, R. E. Parker, also defendant herein, wherein he secured judgment canceling the lease contract between him and Parker and declaring all the improvements on the property to belong to him. Since it is his contention that plaintiff's right or lien was confined in the first instance to Parker's rights of occupancy under the lease, and since that lease was canceled for failure to pay rent, appellant claims that the plaintiff has no recourse whatever either against the lease contract or the improvements which, so far as the evidence discloses, consist solely of the dwelling house constructed of plaintiff's material.

Conceding for the moment, for the sake of the argument, that this case is governed solely by section 11 of the Building Contract Law, we do not think that counsel for defendant has properly interpreted the law. The first clause of that section reads as follows: "Where any work as hereinabove set forth, is done or buildings or other improvements made, where the person for whom the work is done or with whom the contract is made, or by whom the work is done, is not the owner of the land upon which the work is located, *then he shall be subject to all the obligations that are made incumbent on the owner by this act, and the liens and privileges created and established by this act shall operate upon whatever right said person having the work done or doing the work may have to the use of the land as lessee; and said lien and privilege shall operate against the lease such person holds*, if there is one, or if said work is caused to be erected by a mineral lessee, then the privilege shall exist against the mineral lease and whatever rights the lessee may have therein, thereon or thereto. * * *" (Italics ours.)

In the above quotation I have italicized those words which, in my opinion, grant the lien provided for by that section. The words "then he shall be subject to all the obligations that are made incumbent on the owner by this act" refer to the obligations to or the rights of those persons named in section 1 of the act, viz: "Every contractor, sub-contractor, architect, engineer, master-mechanic, mechanic, cartman, truckman, workman, laborer, or furnisher of material, machinery or fixtures, who performs work or furnishes material for the erection, construction, repair or improvement of immovable property."

That means that, whenever building material is furnished to one who does not own the land on which the building is erected, that one is subject to all the obligations that are made incumbent on the owner by this act.

Those obligations are to grant a lien in favor of the persons named in section 1, as quoted above, on the improvements and the land; but in the case provided for in section 11, there can be no lien on the land but upon the rights that the party may have in the land. In the case of a lessee being the builder, it is the lease right and the right of occupancy instead of ownership. In the case provided for in section 11, the ownership of the improvements is in the lessee or other person building, and therefore the lien of the furnisher of material is a perfect right which cannot be defeated by the lessor except as it may operate on the lease itself.

A lessor cannot agree with the lessee for the erection of a building in lieu of rent and defeat the lien of the materialman if the lien is properly established and recorded as required by law. That would be equivalent to defeating building liens by the payment of the contract price in advance, and that is specially prohibited by law. Civ. Code, art. 2774.

If A should contract with B for the erection of a building for the sum of $10,000 and should pay that sum in advance without requiring B to give bond according to law, certainly A's premises, as well as A personally, would be bound for the payment of the entire sum in case of B's failure to pay the laborers and materialmen. In the case of Panama Sash & Door Company v. U. S. Fidelity & Guaranty Co., 12 Orleans App. 15, it was held that the owner could not credit the contractor on an old account and thus defeat the liens provided for in the Building Contract Law, so by analogy, a lessor cannot defeat a lien on a building erected by a lessee as such, or as his agent, by taking the building as payment of rent or under a clause in a lease contract providing for the reversion of improvements to the lessor or landowner.

If the terms of the lease provide a forfeiture or cancellation of the lease, then necessarily the materialman's lien is subject to this right of cancellation. But the lien upon the improvements is different. The obligation to grant a lien upon the improvements themselves is the same upon lessee, as provided in section 11, as it is upon the owner, as provided in section 1 of the act, and it is specifically declared that that lien "shall be superior to all other liens * * * except taxes and local assessments for public improvements or a bona fide vendor's privilege * * * or a bona fide mortgage, provided said mortgage or vendor's privilege exists and is recorded before * * * any material is furnished." In case the building belongs to the landowner, the obligation is on him to grant a lien on the building and the land. If the building is built by the lessee without the knowledge or consent of the landowner for his own purposes, the obligation is on him, the lessee, to grant a lien upon the building and his rights

under the lease. Of course, if he forfeits his rights under the lease on account of failure to fulfill the terms thereof, he has no rights and the holder of the liens necessarily loses his lien rights in so far as the rights of occupancy are concerned. Under our law the building belongs to the lessee, and, if the lienor complies with all the provisions of the law, his lien is preserved upon the building regardless of the failure of the owner of the building, that is the lessee, to live up to his obligation to pay rent on the land. If the lessee owes nothing on the building and defaults in paying his rent on the land, then the building would be subject to seizure and sale for the payment of the rent. But if he does owe furnishers of material and they have preserved their liens, then this building is not subject to seizure and sale for the payment of the rent to the detriment of the lien which the furnisher of material has preserved.

The lower court evidently held that this case is governed by section 11 of the Building Contract Law, and interpreted the law exactly as we have done, for he gave judgment in favor of the plaintiff for the amount prayed for and recognized its lien against the dwelling in question.

In support of his contention that the furnisher of materials is not entitled to a lien on buildings erected on lessors' property by lessees, counsel for appellant cites one paragraph from the syllabus in the case of Klema Realty Co., Inc., v. Fauria et al., 15 La. App. 7, 130 So. 569 (Orleans Court of Appeal). This case is not one where a building was erected on premises of the lessor by the lessee. It was a case of repairs made on a building by a lessee when the lessor "had no knowledge whatever" of the work and "did not acquiesce therein." The question of a lien on the building separately and apart from the realty was not raised or discussed and the only question that was decided was that in such a case there can be no lien against the realty itself.

Another case cited by the appellant is that of Jackson Homestead Ass'n v. Zimmer et al., 16 La. App. 647, 134 So. 126 (Orleans Court of Appeal). The citation, which is a part of the syllabus, reads as follows: "All that was intended by Act No. 298 of 1926, § 11, was to give the furnisher of materials the right to a lien effective only to the extent of the right of the tenant or lessee of the property, where person for whom work is done or with whom contract is made is not owner of land."

It is clear that the question of the right to a lien on the improvements separate and apart from the land was not raised in the case. The only question decided was as to a right to a lien on the realty itself. In that portion of the body of the opinion, on which the syllabus cited is based, it is said: "The mere fact that one person holds an unregis-

tered and unrecorded right to purchase the real estate of another does not give to a third person who furnishes material any right against another innocent party purchasing from the owner, or lending money on the property on the faith of clear certificates. Of course, as to the owner himself the situation might be different, if, by his permission, the prospective purchaser was afforded the opportunity to erect improvements, because the owner, by granting such permission, may, under certain circumstances, create an estoppel which will prevent him from contesting the rights of the materialman."

Even though this case now under consideration should be decided under section 11 as contended, it must be remembered that the dwelling was built by the lessee not only with the special permission and knowledge of the owner himself, but it was built at his urgent demand and he inspected it at different times during the course of its construction, and in accordance with the reasoning of the above-cited case, it would seem that he should be estopped from contesting the rights of the materialman, plaintiff in this case.

But I do not think that the decision of this case should be based on section 11 of the Building Contract Law. It is true that Parker was a lessee or tenant of Pollock, but this building in question was not built by him in accordance with any provision or obligation of the lease contract. Nor was it a building built by a lessee for his own convenience which he would have ever had the right to remove. Buildings and improvements made which are referred to in section 11 of the act are the property of the builders and the landowner must either buy them or permit them to be removed. In case he buys them he does so subject to the liens that may be on them.

Under the terms of the lease contract in this case, Parker was under obligation to repair and enlarge the dwelling house that was on Pollock's property. He did this to the letter and discharged this obligation. There was no provision made in the lease contract or otherwise for the replacement of any house or houses that might be destroyed by fire. The original dwelling was the property of Pollock without any qualification whatever. After Parker had complied with his obligation to repair and enlarge the house, it still belonged to Pollock, and Parker had no right in it whatever except to occupy it. After the lease had run for several months and several weeks after the dwelling had been repaired and enlarged, it was destroyed by fire. This loss was clearly Pollock's and not Parker's. Under some kind of arrangement that has not been explained, the building was insured for $1,400 as Parker's property instead of as Pollock's and Parker collected the money. Under all the rules of law and equity this money belonged to Pollock. Also, under the law it was Pollock's duty to rebuild the dwell-

ing, and, if he had not done so, Parker could have sued to terminate the lease contract on account of the destruction of a part of the leased property. Civ. Code arts. 2692 and 2697. Recognizing his obligation to replace the building, and knowing that Parker, the lessee, had $1,400 insurance that belonged to him (Pollock), he "hopped him about it" and ordered or authorized him (Parker) to proceed at once to replace the burned building. This was done. Pollock permitted Parker to keep all the money and required only that the building be replaced. It was the equivalent of Pollock employing Parker to rebuild the building and paying for it in advance. Parker was the contractor and Pollock was the owner, and the rights of all parties should be determined in accordance with section 1 of the Building Contract Law. Or, if Parker was not a contractor, then he was surely the authorized agent of Pollock with money advanced to him in full for the construction of the building and the rights of all parties should be governed by section 12 of the Building Contract Law. In either case, Pollock, the owner, was fully cognizant of the fact that Parker was buying material for the construction of the work, and in case Parker was the contractor, Pollock was bound personally for the payment of all bills incurred by Parker for the reason that no bond was furnished, and, in addition thereto, the plaintiff had a lien on the improvements, as well as the land on which they were situated. And, if Parker were the agent instead of contractor, the owner, Pollock, was bound exactly as he was in case of Parker being considered as contractor.

When Pollock was decreed to be the owner of the dwelling in question, the court simply recognized a fact. That dwelling was always Pollock's and all the court could do was to restore to him the possession of it on account of his lessee's failure to pay the rent. But this could not rid the building or those premises of the lien for materials which he knew had gone into his building with his consent, and, not only wth his consent, but with his urgent insistence. It would be unconscionable to permit Pollock to enrich himself at the expense of plaintiff by permitting him to hold his land and this dwelling free of all liens for material furnished, when those liens were duly recorded.

The majority opinion holds that the burned house was rebuilt by Parker as lessee just as though he were building a house on leased premises on which there was no residence in the first instance. But the evidence does not substantiate that view. At one point in his testimony, Pollock, the lessor and landowner, testified as follows: "Well, after his house burned down he told me,—he wanted to rent the store building across the street or across the road, and I asked him about rebuilding and he said, 'Don't worry, I am going to build you back a house that is as good or better than the one that burned down.' He said that he had Fourteen Hundred ($1,400.00) Dollars worth of insurance on the old house and that he would rebuild as soon as he collected the insurance, that he was going back and rebuild a house there as good or better than the one that had burned down as soon as he collected the insurance."

At another point in his testimony the following questions and answers appear:

"Q. Well, immediately following the burning of that house I will ask you whether or not you consented or agreed or requested Mr. Parker to rebuild another house on that property? A. Well, as I started to say a while ago, I hopped on him about it and he said he had Fourteen Hundred ($1400.00) Dollars worth of insurance and as soon as he collected the insurance he would rebuild it back. And he was, I reckon, some thirty or forty days collecting the insurance and before he rebuilt it or started to rebuilding it back he lived in the old store building waiting until he could collect the insurance.

"Q. Then you made a demand that he build one? A. Well, according to the contract he was to leave me the improvements there that were there and whatever he put on the land, and I had nothing there after the building burnt up, and I had had a building and improvements there before which I considered were fully worth Six or Eight Hundred Dollars.

"Q. Well, I will ask you subsequent to that time whether or not he did build a house back there? A. Subsequent to which date?

"Q. To the time that you demanded of him that he build the house? A. Yes, after the burn he build back another house which is on the property there now.

"Q. And which is the property in question in this suit? A. Yes, sir. * * *

"Q. But the thing that you were interested in was in seeing that the proper kind of a house was built back? A. Yes, and I was interested too in seeing that he paid the bills. And after Mr. McCrocklin told me about Parker not taking care of his bills some ten or fifteen days before I received the notice, I jumped on Parker and he told me that he would take care of it, and I didn't want to be troubled and worried about paying it and he said that he would take care of it. And he claimed that he had a place in South Louisiana and his returns from down there hadn't been so good, but he said he was going to pay it and he promised me he was going to pay it, and I was after him three or four times about it, riding him to get him to settle it. * * *

"Q. Mr. Pollock, you stated that he did not comply with the terms of the contract? A. He did not wholly comply with the terms of the contract.

"Q. How? A. Well, as to the buildings, the number of buildings he agreed to build according to the lease contract and according to the plans and specifications.

"Q. But you were satisfied with the amount that he did build, weren't you? A. Well; I had to be whether I was or not.

"Q. Well, he put improvements on there on this lease, which amounted to around Two Thousand ($2,000.00) Dollars, didn't he? A. Well, but he had my improvements there before, and he had Fourteen Hundred ($1400.00) Dollars to do that with. In other words, Parker hasn't been out, I might say, anything, because of the fact that he had Six Hundred Dollars, Six to Eight Hundred Dollars as the value of my improvements that were already there and he had the Fourteen Hundred ($1,400.00) Dollars insurance."

A careful reading of the above testimony convinces me that Parker rebuilt the burned residence for Pollock, and Pollock recognized the house as his and claimed it. Parker built it either as Pollock's agent or as contractor. If Pollock claims the house is his absolutely, then he is forever estopped from denying plaintiff's lien on both the house and the land on which it is built.

Furthermore, the finding of the majority opinion is, in my opinion, contrary to the contentions of both parties to the suit, for they both take the position in their pleadings and in their testimony that Parker rebuilt the burned dwelling for Pollock. In the petition of plaintiff there appears the following paragraph: "Petitioner further shows that said materials were furnished and said buildings and improvements erected by and with the consent and at the request of the said W. M. Pollock."

In defendant's answer there appears the following paragraph: "Your respondent further shows that, after, or about the time the said R. E. Parker collected the insurance, he promised and agreed with your respondent that he would build upon said premises a new dwelling house, as soon as the insurance was collected; and that after the insurance of Fourteen Hundred ($1,400.00) Dollars was collected by the said lessee, R. E. Parker, he built a new dwelling house upon said premises, thereby replacing the dwelling house that had been destroyed by fire."

Since Pollock claims the ownership of the building not by reversion under the terms of the lease, but by virtue of it having been built by Parker at his request to replace the burned building, plaintiff's lien is bound to attach both to the building and the land. In holding that the building is now the property of Parker, with full right of removal by him, the majority opinion holds what both parties deny.

It appears to me inconceivable, unconscionable, and contrary to law and equity to hold that Parker should collect the insurance on Pollock's house and be permitted to keep this money on a promise and an agreement to rebuild this house, and, after the house is rebuilt with this money, it should be declared to be the property of Parker.

If Parker were in court demanding the ownership of the house, with the right of removal, the case *might* be different. But both plaintiff and defendant allege and contend that Parker has no interest in the house and never has had.

Article 3249 of the Civil Code specifically states that the lien of the furnisher of materials shall be confined to one acre. This provision of the code is not in conflict with any part of Act No. 298 of 1926, and is not, therefore, repealed by it. Besides, it really supplies an omission in said act which is silent on the question of how much land should be subject to the liens provided in it.

For the reasons assigned, I respectfully dissent from the majority opinion herein and think that the judgment appealed from should be amended by recognizing plaintiff's lien, as the furnisher of materials and supplies, on the one acre of land on which the dwelling is erected and by making the judgment personal against W. M. Pollock, and as thus amended, that it should be affirmed, with all costs to be paid by the appellant.