In re CALDWELL PORT ELEVATOR COMPANY, INC., Debtor.

UNITED STATES FIDELITY & GUAR-ANTY COMPANY, Plaintiff,

v.

LOUISIANA DEPARTMENT OF AGRI-CULTURE, et al., Defendants.

Bankruptcy No. 582–00088–M.

Adv. No. 582–0093–M.

United States Bankruptcy Court,
W.D. Louisiana,
Monroe Division.

Dec. 22, 1982.

Charles C. Trascher III, Snellings, Breard, Sartor, Inabnett & Trascher, Monroe, La., for Caldwell Port Elevator Co., Inc., debtor.

Edwin K. Theus, Theus, Grisham, Davis & Leigh, Monroe, La., for United States Fidelity & Guaranty Co., plaintiff.

C. James Gelpi and Mary Onie Riggs, Gelpi & Willeford, New Orleans, La., for Louisiana Dept. of Agriculture, defendant.

James R. Jeter, Cook, Yancey, King & Galloway, Shreveport, La., for Bank of Dixie, defendant.

Patrick L. Durusau, Jena, La., for LaVon Roark, defendant.

FINDINGS OF FACT

LeROY SMALLENBERGER, Bankruptcy Judge.

Caldwell Port Elevator Company, Inc. (Caldwell), debtor herein, sought relief under Chapter 11 of Title 11 of the United States Code. Caldwell was in the business of storing or purchasing agricultural commodities ('grain' shall be used for brevity).

As required by Louisiana law, Caldwell procured two bonds to protect its clients. The first bond protects those producers of grain who store their grain with Caldwell; the warehouse bond. This bond is in the amount of $100,000.00 and is in favor of the Louisiana State Warehouse Commission.

The second bond is the grain dealers bond in the amount of $25,000.00 made in favor of the Louisiana Department of Agriculture. This bond protects those producers who sell their grain to Caldwell until they receive the purchase price for the grain.

The surety on both bonds is United States Fidelity & Guaranty (USF & G). USF & G admits liability on the $100,000.00 warehouse bond. The entire bond was deposited into the registry of this Court. USF & G provoked this interpleader action to determine who are the rightful claimants and the amount of each claim. As to the $25,000.00 grain dealers bond, liability is contested by USF & G. The bond was not deposited into the Court registry. There are claimants to this bond as well.

The facilities of Caldwell were audited on January 22, 1982. The audit was conducted by the Louisiana Department of Agriculture, Warehouse Commission. Mr. William G. Boudreaux, Assistant Director of the Louisiana Warehouse Commission, supervised the audit and inspection. His findings were attested by him in an affidavit dated April 7, 1982. That affidavit reveals that 307,651.13 bushels of grain should have been in storage with Caldwell. Only 42,415.72 bushels were on hand. Unaccounted for were 222,819.69 bushels.

## CONCLUSIONS OF LAW

### I. THE WAREHOUSE BOND

The warehouse bond money, $100,000.00, was deposited into the Court registry and the surety, USF & G, admits liability on the bond. Claimants to this bond are the Bank of Dixie (Dixie) and LaVon Roark.

Caldwell issued warehouse receipts to represent much of the grain that should have been in the elevator. Caldwell borrowed money from Dixie and pledged those warehouse receipts to Dixie to secure the loans. The Louisiana Department of Agriculture (Agriculture) makes no claim to this bond but it does oppose the claim of Dixie.

The warehouse bond is required by La. R.S. 54:250 which states in pertinent part:

"Every warehouse or warehouse company applying for a license under this Chapter shall execute and file with the commission a surety bond from an approved surety or bonding company licensed to do business in Louisiana.

\*    \*    \*    \*    \*    \*

The bond shall be conditioned on the faithful performance of duties and obligations to the patrons of the warehouse and of the provisions of this Chapter and regulations prescribed by the commission."

■ As Dixie shows, the warehouse bond exists to protect those who are injured when the warehouseman does not faithfully perform his duties and obligations. This protection extends to financial institutions giving credit based upon warehouse receipts. *Louisiana Bank & Trust Co., Crowley v. Roanoke Rice Co-op,* 298 So.2d 868 (La.App.1974).

It is the argument of Agriculture that Caldwell issued warehouse receipts on grain that it did not own. The fact of the large shortages bears this out. In essence, Caldwell was pledging the grain of others. Louisiana law prohibits the pledging of property belonging to another except with the express or tacit consent of the owner. La.C.C. 3142, 3143 and 3145.

Dixie relies on certain case law. In the first case a bank sued the warehouse and its surety based upon warehouse receipts pledged as collateral. The goods enumerated in the receipts and those actually found in an inspection were considerably different as to kind, quality and quantity. The court there found that the purpose of requiring a warehouse bond is to protect depositors of goods as well as those financial institutions giving credit based upon the warehouse receipts. At page 877 of their opinion, that court stated "The banks herein are not suing on the warehouse receipts to have them recognized. They are suing on the obligation of a warehouseman and its surety because of losses sustained as a result of the receipts not corresponding to rice on hand." *Louisiana Bank & Trust Co., Crowley v. Roanoke Rice Co-op.*

■ This may be a subtle distinction but it is valid one nonetheless. Dixie's cause of action arises not because it is executing on the pledged warehouse receipts but because Dixie relied on Caldwell as a warehouseman. As far as Dixie's claim to the bond is concerned, it does not matter whose grain is represented by the warehouse receipts pledged by Caldwell. Caldwell violated the duties and obligations it owed to Dixie as a warehouseman.

Agriculture attempts to distinguish the *Louisiana Bank & Trust* case by speculating that the warehouseman in that case *may* have owned the grain at the time the receipts were pledged. Such a hypothesis is mere speculation. Such a fact would not produce a different result for as that court noted, the actual goods within the bins differed as to kind, quality and quantity from the goods represented in the receipts. The Bank of Dixie's claim against the warehouse bond in the amount of the warehouse receipts pledged by Caldwell is well founded and is valid.

Another claimant to this bond is LaVon Roark. He presents three claims. Two of these are discussed with the grain dealers bond. The third claim is based upon a NSF check in the amount of $7,073.41 issued by Caldwell to Commodity Credit Corporation (CCC). Roark characterizes this transaction as a sale of soybeans to Caldwell.

In fact, Roark was issued warehouse receipts by Caldwell for his soybeans. Mr. Roark was indebted to CCC. Caldwell paid this debt for Roark substituted itself as the new creditor. Caldwell took the receipts as collateral.

Mr. Roark did not intend to sell his beans to Caldwell. This is borne out in Roark's testimony:

"Q: Mr. Roark, on this Commodity Credit transaction, if I understand what you told Mr. Gelpi in court on direct examination, the agreement with Mr. Graves [Caldwell] was that he was going to pay off this loan to Commodity Credit?

"A: Right sir.

"Q: And then continue the loan at the same interest rate as you had at Commodity Credit; was that correct?

"A: That's correct. At that moment in time." [TR. 23]

■ Mr. Roark never endorsed the warehouse receipts. Therefore, title was not transferred to Caldwell as required by La. R.S. 10:7–501(1) and 10:7–502. This Court must conclude that Caldwell held Mr. Roark's beans in storage to secure a loan. Caldwell breached its obligations to Mr. Roark in its capacity as a warehouseman. Mr. Roark has a claim against the warehouse bond for $7,073.41. The amount of the NSF check issued by Caldwell to CCC to pay the debt of Mr. Roark.

## II. THE GRAIN DEALERS BOND

The grain dealers bond is required by La.R.S. 3:684 which states in pertinent part:

"Every person licensed as a grain dealer shall file with the department a bond signed by the applicant, as principal, and by a responsible company authorized to execute surety bonds within the state of Louisiana, as surety, or other good and sufficient bond to be approved by the department, conditioned upon the payment by the applicant to producers for grain purchased by the applicant from producers or the agents of producers. Such bond shall be in the principal amount of $25,000.00.

"Bonds executed under this section shall be made payable to the state of Louisiana, for the use and benefit of any producer whose grain has been purchased by applicant and not paid for.

\*     \*     \*     \*     \*     \*

"Any producer injured by the breach of any obligation for which security is required under the provisions of this section, and/or the commissioner, for the use and benefit of such producer, shall be entitled to sue on the bond in any court of competent jurisdiction to recover the damages which may have been sustained by the breach, ...."

The grain dealers bond, $25,000.00, was not deposited into the registry. The surety on the bond, USF & G, contests its liability to some extent. There are six claimants to this bond.

The parties have stipulated that four claimants are well founded and there is no dispute as to the amount to be awarded. They are:

| | | |
|---|---|---|
| 1. | Oliver Dwayne Cassels | $ 4,372.13 |
| 2. | W.C. Key and Bobby Key | 2,012.85 |
| 3. | Rodney Crews | 147.01 |
| 4. | U.M. Youngblood | 828.48 |
| | TOTAL | $ 7,360.47 |

The Bank of Dixie makes no claim to the grain dealers bond. The two disputed claimants are Agriculture and Mr. Roark. The basis of Agriculture's claim is that Caldwell paid assessments due with a worthless check in the amount of $1,047.95. The cause of Mr. Roark's claim are two 'basis contracts' which will be dealt with later.

There is a clause in the grain dealers bond, executed by Caldwell, which states: "that if the Principal shall honestly conduct said business, faithfully perform all duties and obligations to all parties doing business with said Principal as a grain dealer, and shall pay all monies or accounts owed by Them to the Louisiana Department of Agriculture, any person, firm, exchange, corporation or association whatsoever arising out of Their conduct of such business of a grain dealer in grain products . . ."

■ It is the position of Agriculture that this clause extends coverage to their claim for assessments due. However, we are constrained by Louisiana law on this matter: "It is a well settled doctrine . . . that where a bond is given under authority of a law, whatever is included in the bond and which is not required by law must be read out of it . . .". *Miller v. Bonner,* 163 La. 332, 111 So. 776 (1927).

As in the *Miller* case, it is clear from the statute that the required bond must be made in favor of the state of Louisiana, as the only obligee, and must be conditioned solely as to the faithful performance of the contract by the grain dealer. The Louisiana Department of Agriculture has required of the grain dealer not only assumption of the statutory condition as to the performance of the duties and obligations owed to producers of grain, but has exacted superadded conditions to protect the Department.

Agriculture cites certain case law which it asserts to bolster its claim. In these cases, the claimants assert their claims under the Public Works Act. There the liability of the surety to the claimants was based not upon the statutory duties but upon duties added in the bond contract. The court recognized that the Legislature may provide that statutory bonds may be broader than the statutorily mandated coverage. *Construction Materials, Inc. v. American Fidelity Fire Insurance Co.,* 388 So.2d 365 (La.1980) and *Bullard v. State of Louisiana, Department of Transportation and Development,* 394 So.2d 626 (La.App. 1st Cir. 1980).

In both cases, the surety agreed to extend bond coverage beyond that required by the legislation. Also, in both cases, the court relied on a savings clause within the Public Works Act which allowed the expanded coverage. La.R.S. 38:2247. The court, in both instances, declined to overrule *Miller v. Bonner.*

In the instance of the grain dealers bond there is no statute cited by any litigant comparable to La.R.S. 38:2247 which would allow expanded coverage by contract. In this case, we are mandated to follow *Miller v. Bonner.* See also *Boudreaux v. Puckett,* 433 F.Supp. 650 (E.D.La.1977) reversed on other grounds at 611 F.2d 1028 (5th Cir. 1980).

■ Lastly to be considered are the two undecided claims of LaVon Roark. Each arises out of 'basis contracts' executed on August 19 and 28, 1981 between him and Caldwell. These contracts allow Mr. Roark to receive 80% of the purchase price of soybeans sold to Caldwell. Until June 30, 1982, Mr. Roark has the right to fix the price of the beans on the basis of that days

Chicago Board of Trade price per bushel for July soybean futures. The price per bushel is then reduced by 88 cents per bushel and then multiplied by the number of bushels sold to Caldwell. That sum is compared to the amount advanced to Mr. Roark and he is paid the difference. See La.R.S. 3:690.1.

USF & G argues that the two basis contracts are invalid. The price cannot be determined with certainty as required by La.C.C. 2464. There is no provision for computing price should the Chicago Board of Trade quotations fall below 80% of the August 19 or 28, 1981 price. If that should happen, Mr. Roark would owe Caldwell money. USF & G concludes that Mr. Roark stored his beans and has a claim against the warehouse bond.

The mechanism for fixing price is contained in the contract. It is anticipated by the parties that the future prices will exceed the August 19 or 28, 1981 prices. Should the alternative contingency occur, the contract specifies the method of determining price. This formula would require Mr. Roark to refund the difference to Caldwell. Mr. Roark's claim against the grain dealers bond is valid for the amount owed on the two basis contracts with Caldwell.

## III. CONCLUSION

USF & G admits liability on the $100,000.00 warehouse bond and has deposited the money into the registry of this Court. The Bank of Dixie makes a valid claim on this bond because of warehouse receipts pledged by Caldwell to Dixie. Mr. LaVon Roark also has a valid claim to this bond on account of a $7,073.41 NSF check issued by Caldwell to pay Mr. Roark's indebtedness to Commodity Credit Corporation. Caldwell was storing Mr. Roark's beans.

On the grain dealers bond, Caldwell does not admit liability and did not deposit the money into the court registry. The bond is for $25,000.00. Four claimants are not disputed:

| | | |
|---|---|---|
| 1. | Oliver Dwayne Cassels | $4,372.13 |
| 2. | W.C. Key and Bobby Key | 2,012.85 |
| 3. | Rodney Crews | 147.01 |
| 4. | U.M. Youngblood | 828.48. |

Mr. Roark has a valid claim against this bond on account of two basis contracts for the sale of soybeans to Caldwell who has not paid the purchase price.

The claim of the Louisiana Department of Agriculture for the assessments due paid by Caldwell with a NSF check is not allowed.

The liability of USF & G on the warehouse bond is limited to $100,000.00 and the liability of USF & G on the grain dealers bond is limited to $25,000.00.